**Robert Blake McCALLUM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 066–84.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 9, 1985.

Ronald L. Goranson, Dallas, for appellant.

Henry Wade, Dist. Atty. and R.K. Weaver, Ted Steinke and Mike Miller, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of the offense of bribery. V.T.C.A., Penal Code, § 36.-02(a)(2), as amended in 1975. The jury assessed punishment at five years' imprisonment, probated, and a fine of $10,000.00. The Dallas Court of Appeals affirmed the conviction in an unpublished panel opinion. *McCallum v. State* (No. 05–82–00816–CR 1983).

Appellant petitioned this Court for review asserting, inter alia, the Court of Appeals erred in finding the evidence sufficient to sustain the conviction. We granted appellant's petition to determine the correctness of the Court of Appeals' decision. We reverse.

The appellant was charged and convicted under the 1975 version of V.T.C.A., Penal Code, § 36.02(a)(2). In order to better understand the application of the law to the facts in the instant case a brief review of the statute as enacted in 1974 and as rewritten in 1975 is deemed advisable.

V.T.C.A., Penal Code, § 36.02 (Bribery), was enacted originally as part of the 1974 Penal Code. It provided in part:

"(a) A person commits an offense if he offers, confers, or agrees to confer any benefit on a public servant, party official, or voter:

"(1) *with intent to influence* the public servant or party official in a specific exercise of his official powers or a specific performance of his official duties; or

"(2) with intent to influence the voter not to vote or to vote in a particular manner.

"(b) A public servant or party official commits an offense if he knowingly solicits, accepts, or agrees to accept any benefit on the representation or understanding that he will be influenced in a specific exercise of his official powers or a specific performance of his official duties." (Emphasis supplied.)

The Explanatory Comment in Branch's Ann.P.C., 3rd Ed., Vol. III, § 36.02, to the said 1974 statute states:

"This section covers both bribing a public servant, party official, or voter and soliciting, accepting or agreeing to accept a bribe by a public servant, party, or voter. The broad definition of public servant in Section 1.07(a)(30), should be noted.

This section replaces over 25 special statutes contained in prior law, in an attempt to cover the activity in broad general provisions. Bribery is denounced as a crime in Tex. Const. art. 16, Sec. 41, with conviction carrying with it

the removal from office of any judicial, legislative or executive officer. Not only bribery subvert the function of government to the advantage of the few who can or will pay for special advantages, but more important is the lack of confidence in government which such practices cause."

The elements of bribing another (public or party official) under the 1974 version of § 36.02(a)(1) were:

(1) a person

(2) offers, confers, or agrees to confer

(3) any benefit

(4) on a public servant, party official, or voter

(5) *with intent to influence* the public official or party official in a specific exercise or performance of official powers or duties. (Emphasis supplied.)

The offense of bribery was amended and redefined in 1975. (Acts 1975, 64th Leg., p. 912, ch. 342, eff. Sept. 1975—S.B. 127). It was under this amended version that appellant was charged and convicted.[1]

Said § 36.02, as amended in 1975, read:

"(a) A person commits an offense *if he intentionally or knowingly* offers, *confers*, or agrees to confer on another, or solicits, accepts, or agrees to accept from another:

"(1) any pecuniary benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter;

"(2) *any benefit as consideration* for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding; or

"(3) any benefit as consideration for a violation of a duty imposed by law on a public servant or party official.

It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office or he lacked jurisdiction or for any other reason.

"(c) An offense under this section is a felony of the second degree." (Amended by § 11, S.B. 127, Ch. 342, p. 912; Acts of 64th Leg., 1975, eff. Sept. 1, 1975.) (Emphasis supplied.)

It is noted that the statute was completely rewritten. The 1975 version added the culpable mental states "intentionally or knowingly" to the definition of the offense or offenses in the statute, and elevated the offense to a second-degree felony whereas most offenses under the 1974 version of the statute were felonies of the third degree.

In addition, it is observed that the Explanatory Comment to said 1975 amendment in Branch's Ann.P.C., 3rd ed., Vol. III, § 36.02, states in part:

"This section was completely rewritten based upon Model P.C. Sec. 240.1. *The term 'with intent to influence' was completely omitted, and the term 'as consideration for' was used to emphasize the bargaining aspect of bribery.* This concept includes both express and implied or tacit agreements. Any benefit will suffice to convict for bribery, if it is consideration for the recipient's exercise of official discretion in a judicial or administrative proceeding or it is consideration for a violation of a duty imposed by law on the public official." (See duties imposed by the ethic law, R.C.S. Article 6252–9b.) (Emphasis supplied.)

The American Law Institute's Model Penal Code, Reprint—Proposed Official Draft, § 240.1 (May 4, 1962), states in part on p. 197 under "Status of Section":

"Section 240.1 departs from the earlier draft also in requiring that the benefit be 'in consideration' of the official action or

---

**1.** V.T.C.A., Penal Code, § 36.02, was again amended in 1983 (Acts 1983, 68th Leg., p. 3237, ch. 558, § 2, eff. Sept. 1, 1983—S.B. 651.) This version was not in effect at the time of the instant offense or appellant's trial. The 1983 amendment deleted the word "pecuniary" in Subsection (a)(1) preceding "benefit as consideration"; inserted a new subsection (c); and relettered former subsection (c) as (d).

agreement therefor. This is the more conventional formula in bribery legislation, *and prevents application of the bribery sanction to situations where gifts are given in mere hope of influence, without any agreement by the donee.* We deal with gifts to officials elsewhere. See Section 240.6." (Emphasis supplied.)

The legislative bill analysis of Senate Bill 127 of the 64th Leg., 1975, in dealing with § 11 of the said bill which involved §§ 36.01 and 36.02 of the Penal Code stated in part:

"This section is based on Sec. 1361 of the Proposed Federal Criminal Code (1970 Study Draft) and Sec. 240.1 of the Model Penal Code (1962 Proposed Official Draft), in that both use the term 'as consideration for' in lieu of 'intent to influence to emphasize the bargain aspect of the bribery ... The intent of this change is to more clearly define the offense of bribery and to exclude conduct prohibited by the other section (sic) of Chapter 36 of the penal code...."

Under § 36.02(a)(2) (Bribery—Judicial or Administrative Proceeding), as enacted in 1975, the elements of the offense under Subsections (a)(2) are:

(1) a person

(2) intentionally or knowingly

(3) offers, confers, agrees to confer, solicits, accepts, or agrees to accept

(4) a benefit

(5) as consideration for

(6) the recipient's decision, opinion, recommendation, vote, or other exercise of discretion.

See Branch's Ann.P.C., 3rd Ed., Vol. III, § 36.02 (Check List of Elements Necessary to Establish Offense).

As observed, there are several different modes of committing the offense under Subsection (a)(2).

In view of the obvious changes made in the statute, we noted rules of statutory construction.

V.T.C.A., Penal Code, § 1.05 (Construction of Code), provides:

"(a) The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.

"(b) Unless a different construction is required by the context, Sections 2.01, 2.02, 2.04, 2.05, and 3.01 through 3.12 of the Code Construction Act (Article 5429b–2—Vernon's Texas Civil Statutes) apply to the construction of this code."

Article 5429b–2, § 2.01, supra, reads in part:

"Sec. 2.01. Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

In *Ely v. State,* 582 S.W.2d 416 (Tex.Cr. App.1979), it was held that in absence of special definitions, statutory language can be measured by common understanding and practices or construed in sense generally understood.

The term "consideration" is not defined for the purpose of V.T.C.A., Penal Code, § 36.02, or for the Penal Code, or the Code of Criminal Procedure. Thus we must look elsewhere for the meaning of the term as used in the bribery statute.

 Given the nature of the bribery offense, we do not conclude that "consideration" was used in the exact sense used pertaining to a valid and legally enforceable contract, but nevertheless it can be interpreted as an inducement to an illegal contract, that of bribery.

Black's Law Dictionary, Fifth Edition, defines "consideration" as the "inducement to a contract. The cause, motive, price, or impelling influence which induces a contracting party to enter into a contract. The reason or material cause of a contract. Same right, interest, profit or benefit accruing to one party, or some forebearance,

detriment, loss, or responsibility, given, suffered or undertaken by the other."

Webster's Third New International Dictionary (Unabridged Ed. 1961), defines "consideration" in part as "8. something given as recompense: as a payment, reward...."

The Prentice-Hall Encyclopedic Dictionary of Business Law (1961) defines "consideration" as the "promise or conduct that each party to a contract gives in exchange for the promise or conduct of the other."

In 14 Tex.Jur. 3rd, Contracts, § 102, p. 196, wherein consideration is discussed, it is written: "... it must be offered by one party and accepted by the other as an essential element of the agreement. Nothing may be consideration that the parties do not regard as such at the time of entering into the agreement...."

■ Given the legislative history and wording of the statute, as enacted in 1975, we construe the offense, particularly where it alleges the accused intentionally or knowingly conferred "a benefit as consideration for" (§ 36.02(a)(2)) as requiring a bilateral arrangement—in effect an illegal contract to exchange a benefit as consideration for the performance of an official function.

The indictment in the instant case in pertinent part alleged the appellant McCallum did

"knowingly and intentionally confer upon Suzanne Wills a benefit, to wit: Champagne as consideration for Suzanne Wills' decision and vote as a juror in a judicial proceeding, to wit: a jury trial then in progress in the 95th District Court of Dallas County, Texas, being Cause Number 80–6294–D, styled *Joanne Demeson v. National Bonding Agency and Blake McCallum*...."

Thus under the mode of the offense as alleged in the indictment, the State was required to prove, inter alia, beyond a reasonable doubt that (1) appellant conferred upon Wills a benefit, to-wit champagne and that (2) the champagne was consideration for the decision and vote of Wills as a juror

in the described cause pending in the said district court.

With this background we now turn to the facts of the case to determine the sufficiency of the evidence to sustain the conviction.

The record reflects that on Friday, February 20, 1981, a civil damage suit, as described in the indictment, in which appellant and his company were defendants, had been in progress for four weeks. On the date in question the jury had begun deliberations and had deliberated for about two hours when District Judge Joe Fish permitted the jury to separate for the weekend. Judge Fish appropriately instructed the jurors not to discuss the case or mingle with anyone involved in the trial or to accept any favors from them, etc. Suzanne Wills was one of the jurors.

Wills, apparently a very attractive young lady, testified that on the Friday evening in question about 7 p.m. she went alone to TGI (Thank God It's) Friday, a bar and restaurant in Dallas where she planned to meet two female friends for dinner. She acknowledged Friday's was a popular place with young singles. Upon arrival she proceeded to the crowded bar area to obtain a drink. There she saw the appellant and his attorney. The appellant approached her and asked her if he could get her a drink. She reminded him they were not to have any contact. He replied, "It won't hurt" or something to that effect. Later he handed her a glass of wine. She didn't know how he obtained it or who paid for it. Her friends, Karen Thoman and Sue Ann Hoster, arrived and they went to a table for cocktails and dinner. Later the appellant joined them at the table. She did not recall that he had a friend with him. Wills told appellant she was uncomfortable about the situation and he responded it didn't matter if they didn't discuss the trial. No further mention was made of the trial. Wills related that for about five minutes all of the table engaged in small talk. Someone mentioned Elan's, a Dallas nightclub, and the possibility of going there later. Appellant then left the table.

After dinner Wills drove alone to Elan's about 8:30 or 9 p.m. She recalled standing in line with her girlfriends but did not recall appellant in the line with them though she did not have a membership at Elan's. After obtaining admission, she said they stood at a railing where the waitress brought them a bottle of Dom Perignon champagne, which was expensive, about $125.00 a bottle. During the evening three or four bottles of champagne were brought to them. She did not know who ordered the champagne or who paid for it. She did not pay for it and made no inquiries of the waitress. She saw the appellant at the club and remembered he said "Hi," but he was not with her group. Her friends left about 11:30 or 12 p.m., and the appellant left the club sometime thereafter, but she did not leave until 12:30 a.m. She recalled a nice looking dark-haired young man with whom she danced several times during the evening. On cross-examination she vaguely recalled being approached late in the evening by an angry ex-boyfriend who engaged her in argument until the dark-haired young man intervened. She later learned the dark-haired man was James Pool. Wills related that she talked with the appellant about seven minutes at Friday's and not thereafter and there was no discussion of the trial or of her vote as a juror. She was not influenced.

Karen Thoman testified she and Sue Ann Hoster joined Wills at Friday's on February 20, 1981, for cocktails and dinner. During the dinner Thoman stated appellant and his dark-haired male friend came to their table. Wills protested, but appellant said it would be all right if the case was not discussed. She later learned Wills was a juror. Thoman related they all engaged in small talk. Someone mentioned champagne they served at Elan's, and later after dinner she and Hoster drove to Elan's. They stood in line with Wills, appellant and his friend. After admission all five stood at a railing in the crowded club where they were served several bottles of expensive champagne. She did not know who ordered the champagne or who paid for it. She did not. Thoman explained that while appellant visited with other people in the club he was with their group most of the evening. The dark-haired young man was paying particular attention to Wills and they danced several times during the evening. At no time did she hear any conversation about the civil trial. She left with Hoster. She admitted she was intoxicated at the time.

Sue Ann Hoster testified that during dinner at Friday's with Wills and Thoman appellant and his tall, good-looking dark-haired friend came to their table. She knew appellant was a defendant in the case in which Wills was a juror because Wills had told her. Appellant told them not to worry so long as there was no discussion about the case. Hoster recalled they engaged in small talk and the trial was not mentioned. She did recall that appellant wanted to take them to Elan's where he had a membership, and told them about the $125.00 a bottle champagne served there. He offered to buy as much as they wanted. She and Thoman drove to Elan's together, and stood in line with Wills and appellant. She did not recall the appellant's dark-haired friend being in line or at Elan's at all. After admission, Hoster recalled they went to a standing bar where appellant ordered the first bottle of champagne which they drank. She had none of the second bottle. She recalled that appellant visited with other individuals in the club, but did pay attention to Wills and engaged her in conversation which she did not hear. She left after an hour and was not there if a third bottle of champagne was served.

The State offered evidence that $546.15, including a $35.00 tip, was shown as charged on appellant's American Express card at Elan's. The club's tab showed there were four bottles of Dom Perignon champagne at $125.00 per bottle and two bourbon and one Scotch drinks. On the following Monday it appears Wills reported the incident to Judge Fish, who made inquiries and then referred the matter to the District Attorney's office. Also on Monday the jury returned an unanimous verdict

against the appellant and his bonding company in the amount of $165,500.00.

Appellant called several friends who testified it was customary on social and other occasions for appellant to use his credit cards to pay bills or tabs for friends, and have his friends reimburse him later. James Pool, 29, testified he was a friend of the appellant and formerly dated a secretary at his bonding agency. On the date in question he happened to go to Friday's, saw the appellant and visited with him. He observed appellant speak with Wills, whom he considered attractive. Pool asked appellant to introduce him and appellant explained she was a juror in his case, and not to speak of the case or about him. Appellant took him to a table and introduced him to Wills and left. After a conversation with Wills and her friends, he returned to the bar to visit with the appellant. He asked appellant to go to Elan's with him, and suggested they ask the three women to go there also. He felt the women might be interested in the Dom Perignon champagne and offered to pay for it if appellant used his credit card as he had none. Appellant agreed. Later they returned to the table and invited the women to Elan's, telling them about the champagne. The women indicated they might come. Pool drove the appellant to Elan's and they had some drinks. The women arrived and they joined them, and Pool and appellant ordered champagne. Appellant's credit card was used. Pool was paying attention to Wills and they danced several times. Appellant visited from time to time in other parts of the club. After the second bottle was finished, the other two women left and Wills remained. A third bottle was ordered. Pool recalled others had joined their group and were drinking champagne. Subsequently appellant indicated he desired to leave, ordered a fourth bottle, cleared his tab with the club, and left. Pool indicated that later Wills became involved with an ex-boyfriend who tried to force her from the club, and he intervened. He then took Wills home and spent the night at her apartment. He drove her to Elan's the next morning to pick up her car in the parking lot. Pool related he later reimbursed appellant for the cost of the champagne.

Appellant testified he and his attorney went to Friday's after court was adjourned on the date in question. He saw Wills come into the bar and try to get a drink. The crowd was deep at the bar. Trying to get the bartender's attention, appellant told Wills he would "wave down" a bartender for her, and asked what she was drinking. Upon her response he yelled to the bartender to give her a glass of wine. He didn't know who paid for it, he didn't recall whether it was on his tab. A little later Pool, who was at the bar, asked him for an introduction to Wills. Appellant explained Wills was a juror, and asked Pool not to mention the case if he made the introductions. He took Pool to the table and introduced him to Wills. She introduced her friends, and appellant left and returned to the bar. Pool stayed at the table but returned to the bar in 10 minutes or so. Pool suggested they go to Elan's and see if the "girls" wouldn't go with them. Pool said he would pay for the champagne. They returned to the table and invited the "girls" to go with them to Elan's, telling them it was an exclusive club which served Dom Perignon champagne. Appellant stated he was interested in getting to know Karen Thoman better. The women indicated they might come to Elan's. He and Pool drove to Elan's in Pool's car. They had a drink, he gave the waitress his credit card and set up his tab. When the three women arrived, either he or Pool ordered the first bottle of champagne. Five glasses were brought and they all had champagne. Pool directed his attention to Wills. Appellant directed his attention to Karen Thoman, but was unsuccessful, and he began to mingle among the crowd. A second bottle was ordered. After the second bottle was consumed, Thoman and Hoster left. About 30 minutes later he ordered another bottle, signed his credit card voucher, called a runner from his office to come and take him to his car at Friday's. He stated that subsequently Pool paid him for the

champagne in accordance with their agreement.

Appellant denied ever discussing the case with Wills except to say the case would not be discussed. He never heard Pool mention the case to Wills, nor heard it mentioned by anyone that evening. He denied the allegations of the indictment, stated he did not intend to influence Wills in any way.

While the evidence shows the appellant ordered the champagne and it was charged to his credit card, there is no showing he conferred the champagne on Wills in exchange or in consideration of her vote as a juror. There was no evidence of a bilateral agreement.

The Court of Appeals in its opinion stated:

"While this testimony is not entirely consistent, we conclude that the trier of the fact at the guilt/innocence stage had more than sufficient evidence before it to determine beyond a reasonable doubt that appellant was guilty as charged, despite assertions by Wills that she was unaware of any explicit bribery offers. *Mahome v. State*, 542 S.W.2d 177 (Tex. Cr.App.1976). The jury was entitled to disbelieve Wills and to accept instead the testimony of the other witnesses on the issue of guilt. *Johnson v. State*, 571 S.W.2d 170 (Tex.Crim.App.1978)."

First, we observe that *Mahome* was decided under the 1974 version of § 36.02 before it was rewritten in 1975. *Mahome* can be clearly distinguished on the law and on its facts.[2] Second, the Court of Appeals acknowledged the testimony of the complaining witness failed to make a case, but asserted the jury could have believed the other witnesses. Their testimony is not set out in the opinion of the Court of Appeals. As we have seen, none of that testimony establishes the essential elements of the mode of the offense charged against the appellant under § 36.02(a)(2). None of them heard the appellant and Wills even discuss the civil trial, much less any agreement for the champagne being the consideration for Wills' vote as a juror. There was no showing of any bilateral agreement.[3]

We cannot conclude, viewing the evidence in the light most favorable to the prosecution, that a rational trier of the facts could have found the essential elements of the alleged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See also *Jackson v. State*, 672 S.W.2d 801 (Tex.Cr.App.1984); *Houston v. State*, 663 S.W.2d 455 (Tex.Cr.App.1984).

The judgments of the Court of Appeals and trial court are reversed and a judgment of acquittal ordered. *Burks v. United*

2. Mahome was convicted of bribery of a public official under the 1974 version of § 36.02. The indictment alleged the defendant with offering a benefit ($44.00) *with intent to influence* a police officer to "keep from being arrested." After being stopped for traffic offenses, the defendant handed the officer $44.00 and after the officer asked repeatedly what the money was for, the defendant said, "You know, man, I'm D.W.I."

3. In *White v. State*, 156 Tex.Cr.R. 635, 245 S.W.2d 704 (1952), this Court wrote:

"The prosecution arose under Art. 173, P.C., which makes it unlawful to 'bribe, or offer to bribe,' a peace officer to do or not to do certain acts in violation of his duty as an officer.

"The offense denounced under this statute is composed of two elements: One is the bribe, while the other is the offer to bribe.

"The instant indictment charges bribery and not an offer to bribe. Hence, the sufficiency of the evidence to support this conviction must be weighed in determining whether a bribe is shown.

"To constitute the offense of bribery of an officer, there must be shown not only the offer on the part of the briber but acceptance thereof by the one who is bribed. *Selvidge v. State*, 126 Tex.Cr.R. 489, 72 S.W.2d 1079.

"Hence, the deputy sheriff who the indictment charged was bribed testified directly that he did not accept the bribe but told the appellant he would have to take the offer up with his superior, the sheriff. Indeed, at one place in the testimony of the witness, he strongly suggests that the alleged bribe money was given to him for a purpose entirely different from that alleged in the indictment. In any event, the testimony shows nothing more than an offer to bribe, as distinguished from the completed offense of bribery."

*States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).