**Dissenting and Opinion Filed August 28, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01421-CR

**STACY STINE CARY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-81637-2011**

## DISSENTING OPINION

Before Justices FitzGerald, Lang, and Fillmore
Dissenting Opinion by Justice FitzGerald

I dissent from the majority's opinion and judgment because the evidence is insufficient to support appellant's convictions.

With respect to the bribery charges at the heart of this case, this case is most unusual because the State's evidence is not merely insufficient—it affirmatively negates an essential element of the bribery charges and proves appellant not guilty. To convict appellant under the penal-code sections relied on by the State, sections 36.02(a)(1) and (a)(2), the State had to prove that certain transfers of funds by appellant were *not* political contributions. But the State's own theory of the case was that the transfers *were* political contributions—monies intended to be spent on a particular judicial candidate's campaign for office. Accordingly, the State could not properly charge appellant under sections 36.02(a)(1) and (a)(2), yet it did. Only section

36.02(a)(4) deals with political contributions of the sort involved in this case, and that section carries considerably more onerous requirements than the State was required to prove under sections 36.02(a)(1) and (a)(2) in this case.

## I. BRIBERY

**A. Applicable law**

Appellant was convicted of six counts of bribery. The bribery statute provides as follows:

(a) A person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another:

(1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter;

(2) any benefit as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding;

(3) any benefit as consideration for a violation of a duty imposed by law on a public servant or party official; or

(4) any benefit that is a political contribution as defined by Title 15, Election Code, or that is an expenditure made and reported in accordance with Chapter 305, Government Code, if the benefit was offered, conferred, solicited, accepted, or agreed to pursuant to an express agreement to take or withhold a specific exercise of official discretion if such exercise of official discretion would not have been taken or withheld but for the benefit; notwithstanding any rule of evidence or jury instruction allowing factual inferences in the absence of certain evidence, direct evidence of the express agreement shall be required in any prosecution under this subdivision.

(b) It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office or he lacked jurisdiction or for any other reason.

(c) It is no defense to prosecution under this section that the benefit is not offered or conferred or that the benefit is not solicited or accepted until after:

(1) the decision, opinion, recommendation, vote, or other exercise of discretion has occurred; or

(2) the public servant ceases to be a public servant.

(d) It is an *exception* to the application of Subdivisions (1), (2), and (3) of Subsection (a) that the benefit is a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305, Government Code.

(e) An offense under this section is a felony of the second degree.[1]

The court of criminal appeals has explained that the phrase "as consideration for" means that the accused offered or conferred the benefit "as an inducement to an illegal contract, that of bribery."[2]  When the allegation is that the accused actually conferred the benefit, the statute requires "a bilateral arrangement—in effect an illegal contract to exchange a benefit as consideration for the performance of an official function."[3]  The *McCallum* court favorably quoted commentary from the Model Penal Code in which the drafters opined on the significance of the "consideration" requirement in modern bribery statutes: "This is the more conventional formula in bribery legislation, *and prevents application of the bribery sanction to situations where gifts are given in mere hope of influencing, without any agreement by the donee*."[4]  Even when the conduct made the basis of a charge is an offer instead of a completed transfer of a benefit, the statute requires purposeful conduct aimed at an illegal contract—that is, an offer of a benefit with the purpose of accomplishing an exchange of the benefit for an official action.[5]

The superseding indictment charged appellant with bribery in counts two through seven. Count two is illustrative of all six of those counts, and in that count the State alleged as follows:

---

[1] TEX. PENAL CODE ANN. § 36.02 (West 2011) (emphasis added).

[2] *McCallum v. State*, 686 S.W.2d 132, 135 (Tex. Crim. App. 1985).

[3] *Id*. at 136.

[4] *Id*. at 135 (quoting Model Penal Code, Reprint—Proposed Official Draft, § 240.1 (May 4, 1962)) (emphasis in original).

[5] *See Martinez v. State*, 696 S.W.2d 930, 933 (Tex. App.—Austin 1985, pet. ref'd).

## COUNT TWO

### STACY STINE CARY

hereinafter styled Defendant, on or about January 4, 2008, and before presentment of this indictment, in the County and State aforesaid, did then and there intentionally and knowingly offer, confer, and agree to confer a benefit, other than a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305 of the Government Code, to-wit: $50,000, to Suzanne H. Wooten, a public servant, to-wit: a candidate

for the office of Judge of the 380th Judicial District Court and presiding Judge of the 380th Judicial District Court, as consideration for Suzanne H. Wooten's decision, opinion, recommendation, vote, and other exercise of discretion as a public servant and as consideration for Suzanne H. Wooten's decision, vote, recommendation, and other exercise of official discretion in a judicial proceeding, to-wit: filing paperwork to run for Judge, proceeding and continuing with a campaign to unseat the incumbent elected Judge of the 380th Judicial District Court, and as Judge of the 380th Judicial District Court presiding over and issuing favorable rulings in cases in which the Defendant and David Cary are parties;

The jury was charged that appellant could be guilty of bribery either as a principal or as a party. Under the law of parties, a person is guilty of an offense if the offense is committed by another and the person is criminally responsible for the other person's conduct.[6] As relevant to this case, a person is criminally responsible for another's conduct if, acting with intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.[7] To convict appellant of bribery as a

---

[6] TEX. PENAL CODE ANN. § 7.01 (West 2011).

[7] *Id*. § 7.02(a)(2).

–4–

party, the State had to prove (1) that someone else committed bribery, and (2) that appellant committed a listed act with the intent to promote or assist the commission of bribery.[8]

Under the appropriate standard of review, we consider all of the evidence in the light most favorable to the jury's verdict and determine whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt, based on the evidence and the reasonable inferences therefrom.[9] We must defer to the jury's credibility and weight determinations because the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony.[10] It is not necessary for every fact to point directly and independently to appellant's guilt for us to uphold the conviction; the evidence is sufficient if the finding of guilt is warranted by the cumulative force of all the incriminating evidence.[11]

**B.      Summary of the evidence**

In 2003, appellant's future husband David Cary filed for divorce from his previous wife Jennifer Cary in the 380th Judicial District Court of Collin County. Charles Sandoval was the presiding judge of that court. The parties were divorced in October 2004, but contentious child-custody issues arose repeatedly after the divorce decree was signed. Appellant concedes the evidence supports the propositions that her husband thought Judge Sandoval was a bad and unfair judge, and that her husband wanted Judge Sandoval to be defeated in 2008.

There was evidence that James Spencer met with the Carys in October 2007, and that they discussed several topics, including promotion of "family-centered advocacy, with an emphasis on parental rights." The State introduced into evidence a purported engagement letter from Spencer to appellant dated October 1, 2007, in which Spencer stated that he would provide

---

[8] *See Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985).

[9] *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

[10] *Id.*

[11] *Id.*

consulting services in four areas for $150 per hour up to a maximum budget of $250,000. The majority concludes that the jury could have inferred that Spencer actually created this document much later, perhaps as late as 2009, to create an explanation for appellant's large transfers of funds to Spencer in early 2008. The evidence of the services Spencer allegedly performed for appellant under the agreement was such that the jury could have concluded that Spencer's services were not worth the $150,000 that appellant paid Spencer in the first three months of 2008.

There was evidence that in December 2007, Spencer recruited Suzanne Wooten to run against Judge Sandoval in the 2008 Republican primary, which was to be held on March 4, 2008. Wooten asked Spencer to be her campaign manager. Wooten filed as a candidate in the Republican primary on January 2, 2008, and appointed attorney Alma Benavides as her campaign treasurer. Soon thereafter, appellant transferred sums of money to Spencer as follows:

| January 4 | $50,000 |
| January 30 | $25,000 |
| February 14 | $25,000 |
| February 26 | $25,000 |
| March 7 | $10,000 |
| March 14 | $15,000 |

Each of those transfers was the basis of one of the six bribery counts against appellant. Spencer testified that he used the money from appellant to pay for Wooten's campaign, but he also testified that it was his money to spend, that he thought Wooten would pay him back, and that Wooten did pay him back. As is chronicled in the majority opinion, appellant's payments to Spencer generally correlated with (1) the timing of certain telephone calls involving Spencer, the Carys' home telephone, David Cary's cell phone, Wooten, and campaign consultant Hank Clements, and (2) the timing of certain financial needs of the Wooten campaign. Given the evidence, the jury could reasonably infer that appellant made the payments when Spencer requested them, and that Spencer's requests were related to the financial needs of the Wooten

–6–

campaign rather than any particular work he had done for appellant under the alleged October 2007 consulting agreement. The evidence did not show that Spencer ever made his requests for money directly to appellant; the evidence showed only that, around the times of the payments, Spencer had communications involving either David Cary's cell phone or the Carys' home telephone.

The State adduced other circumstantial evidence. David Cary's co-worker Jay Valentine testified that he had heard David Cary say Wooten was going to change rulings made in David Cary's family-law matter and that Spencer had "fixed his situation with the judge, and was going to get his situation reversed." Valentine also testified that Spencer said he "owned" Wooten. But there was no evidence that appellant was present when any of these statements were made. There was also evidence that Spencer and David Cary were particularly interested in the United States Supreme Court's *Caperton*[12] decision about the ramifications of campaign contributions to judges. There was evidence that David Cary told Spencer when David Cary's ex-wife hired Wooten's campaign treasurer Benavides to represent her in their family-law case, that Spencer told Benavides and her law partner that they did not want to be involved in the case, and that Wooten recused herself after Benavides appeared in the case. And there was evidence that Wooten did not voluntarily recuse herself from appellant's lawsuit against Jennifer Cary and Israel Suster even though Benavides and her law partner appeared on Jennifer Cary's behalf in that matter.

## C.    Application of the law to the facts

The question presented is whether a rational jury, assessing all the evidence adduced at trial, could have found beyond a reasonable doubt that appellant herself committed bribery or

---

[12] *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009).

that she encouraged or helped her husband or Spencer commit bribery with the intent to promote or assist the commission of the evidence. In my view, the answer is no, for several reasons.

### 1.    The "political contribution" exception

The following analysis falls in the category of unassigned error. In my judgment, there must be an exceptional reason for entertaining unassigned error. This is such a case.

The State's theory of its bribery case was that appellant paid Spencer the $150,000 to spend on Wooten's judicial campaign. Although sections 36.02(a)(1) and (a)(2) of the bribery statute required, among other things, that the money not be a political contribution, and the indictment so alleged, the State's evidence showed the money was a political contribution. Thus, in offering evidence to prove bribery under sections 36.02(a)(1) and (a)(2), the State simultaneously negated an essential element of its case—that the payments were not political contributions. In addition, such evidence demonstrated that the prosecution could properly be brought under section 36.02(a)(4), with its attendant requirement of direct evidence of an express agreement.

We raise error sua sponte under the unassigned-error doctrine if the record discloses an error that should be addressed in the interest of justice. [13] A serious concern is that the bench and bar will construe the majority opinion as approval of a prosecution brought under sections 36.02(a)(1) and (a)(2), notwithstanding that the foundation of the case is built upon political contributions. Another concern is that the State failed to prove a substantial and critical element of the offense. Not only did the State fail to prove an element, the State also proved appellant was not guilty of the crime charged. By disproving an element, that is, by proving the funds were political contributions, the State proved appellant did not commit and could not have committed the offenses charged and thus could not legally be convicted of a criminal offense

---

[13] *See Perez v. State*, 323 S.W.3d 298, 307 n.5 (Tex. App.—Amarillo 2010, pet. ref'd).

under sections 36.02(a)(1) and (a)(2). A conviction for conduct that does not constitute an offense under the law is an injustice we may not ignore. Bribery charges, as serious as they are, must be properly brought and proved under the appropriate statutory provisions.

The State, in seeking a conviction under sections 36.02(a)(1) and (a)(2), sidestepped the obligation imposed by section 36.02(a)(4) to produce direct evidence of an express agreement and ignored the clear application of section 36.02(a)(4). An affirmance gives the seal of approval to a completely misdirected and unsupported prosecution and conviction that are not supported by law. For the more detailed reasons that follow, this case demands unassigned-error review.

At the outset, let us closely examine the provisions of the bribery statute. Sections 36.02(a)(1) and (a)(2) basically proscribe conferring a benefit on a public servant as consideration for an exercise of discretion as a public servant, or official discretion in a judicial proceeding.

Section 36.02(d) creates an **exception** to sections 36.02(a)(1), (a)(2), and (a)(3) for certain political contributions and political expenditures. In other words, if the exception applies, a person may not be prosecuted under either provision because, as to the particular circumstances described, political contributions, the person has not committed a criminal offense. The State is obliged to "negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception."[14]

Accordingly, the superseding indictment specifically alleged that the benefits appellant offered to or conferred on Wooten were benefits "other than a political contribution as defined

---

[14] TEX. PENAL CODE ANN. § 2.02 (West 2011).

by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305

of the Government Code."[15]  The relevant provisions of the election code provide:

> (2) "Contribution" means a direct or indirect transfer of money, goods, services, or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a transfer. The term includes a loan or extension of credit, other than those expressly excluded by this subdivision, and a guarantee of a loan or extension of credit, including a loan described by this subdivision. The term does not include:
>
>> (A) a loan made in the due course of business by a corporation that is legally engaged in the business of lending money and that has conducted the business continuously for more than one year before the loan is made; or
>>
>> (B) an expenditure required to be reported under Section 305.006(b), Government Code.
>
> (3) "Campaign contribution" means a contribution to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure. Whether a contribution is made before, during, or after an election does not affect its status as a campaign contribution.
>
> (4) "Officeholder contribution" means a contribution to an officeholder or political committee that is offered or given with the intent that it be used to defray expenses that:
>
>> (A) are incurred by the officeholder in performing a duty or engaging in an activity in connection with the office; and
>>
>> (B) are not reimbursable with public money.
>
> (5) "Political contribution" means a campaign contribution or an officeholder contribution.
>
> (6) "Expenditure" means a payment of money or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a payment.
>
> (7) "Campaign expenditure" means an expenditure made by any person in connection with a campaign for an elective office or on a measure. Whether an expenditure is made before, during, or after an election does not affect its status as a campaign expenditure.[16]

---

[15] *See* TEX. PENAL CODE ANN. § 32.06(d).

[16] TEX. ELEC. CODE ANN. § 251.001(2)–(7) (West 2010).

The State contended and the State's evidence showed that the monies transferred in this case were political contributions—monies used to defray political expenditures incurred by Wooten during her election campaign. Indeed, that was the heart of the State's theory of the case. Thus, section 36.02(d) comes into play, making the provisions of the bribery statute under which appellant was prosecuted inapplicable. In other words, under the facts in this case, in order to prosecute appellant under subsections (a)(1) and (a)(2), the State had to allege and prove the monies were not political contributions. The State properly alleged this, but the State's proof showed the opposite, that the monies were political contributions used to pay political expenditures.

If appellant had been prosecuted under the proper provision, section 36.02(a)(4), the State would have had to allege and prove "*an express agreement*." This provision also emphasized that "notwithstanding any rule of evidence or jury instruction allowing factual inferences in the absence of certain evidence, *direct evidence* of the express agreement shall be required in any prosecution under this subdivision."[17] The record is bare of such evidence.

If these convictions for bribery were permitted to stand, the distinction between a straightforward bribery scheme involving the improper payment of money for an exercise of discretion or the inappropriate extension of special treatment in a non-election context and the unique circumstances present in an election context—circumstances that are inherently sensitive because of the nature of the political campaign process—with its additional elements of proof necessary to secure a conviction, would be erased by judicial fiat.

The majority concludes that the jury was entitled to find that appellant's payments to Spencer were not political contributions because there was evidence that those payments exceeded the legal contribution limits and there was evidence that Wooten did not report them in

---

[17] *See* TEX. PENAL CODE ANN. § 36.02(a)(4) (emphasis added).

–11–

compliance with the election code. But the definitions of "contribution," "campaign contribution," and "political contribution" do not incorporate these other legal requirements. In other words, an illegal political contribution is still a political contribution.

The State adduced no evidence that appellant conferred any benefits on Wooten that were not political contributions as defined by Title 15 of the election code. Further, the State adduced evidence appellant was not guilty of the offense charged. Accordingly, the State failed to prove an essential element of its case under sections 36.02(a)(1), (a)(2), and (d); accordingly, we should reverse all six convictions for bribery and render judgments of acquittal.

### 2. Lack of consideration

The matter does not end there. Sections 36.02(a)(1), (a)(2), and (a)(4) all require a benefit to be conferred on someone (in this case, Wooten) in consideration for the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant. The first two methods delineated in the indictment, and the State's evidence related thereto, involved Wooten's "filing paperwork to run for Judge and proceeding and continuing with a campaign to unseat the incumbent elected Judge." Neither act is inherently criminal. Neither act constituted consideration. And neither constituted a decision or act of discretion by Wooten as a public servant. These acts constituted only steps in the process of Wooten's attaining public office, that is, attaining the position of judge. Encouraging a person to run for office, any office, in and of itself, is a lawful and acceptable civic act, as is becoming a candidate for public office. Encouraging a person to proceed and continue with a campaign to unseat an incumbent judge is likewise a lawful and acceptable civic act. It is common for citizens to engage in such acts on a regular basis, and both acts are considered public spirited.[18] The bribery statute and the

---

[18] This scenario is different from the fact pattern presented in cases like *Valencia v. State*, No. 13-02-020-CR, 2004 WL 1416239 (Tex. App.—Corpus Christi June 24, 2004, pet. ref'd) (mem. op., not designated for publication). *Valencia* was a routine bribery case in which a county commissioner offered to vote for two men to be appointed as county constables if they agreed to exercise their discretion to hire as

–12–

traditional idea of bribery involve the quid pro quo of paying a public servant so that the recipient will make decisions desired by the payor once the recipient assumes office.[19] In other words, bribery addresses graft and corruption. If acts such as encouraging a person to file or encouraging a person to keep running for office can be construed as the consideration to establish bribery, the statute will condemn legitimate civil and political activity and it will be left only to the State's imagination what an indictment could allege in terms of similar acts, such as seeking the signatures of enough voters to qualify to run, attending specific political events or gaining endorsements, and the like.[20] In summary, these first two alleged acts of filing paperwork to run and continuing to run constitute but steps in the political process, and neither constitutes the kinds of decisions or exercises of discretion contemplated by the statute as consideration.

Accordingly, we should render judgment acquitting appellant of all six counts of bribery.

### 3. Insufficiency of the evidence as to other elements

Even setting aside the State's failure to disprove the political-contribution exception and the lack-of-consideration defect described above, I agree with appellant that the evidence was insufficient to support her bribery convictions. The jury reasonably could have believed that appellant's consulting agreement with Spencer was merely a cover story to justify appellant's sending Spencer money to pay for Wooten's campaign expenses. The jury reasonably could have believed that appellant wanted to help elect Wooten because she thought Judge Sandoval was a bad judge and was treating appellant's husband unfairly in his ongoing litigation with his

---

deputies two people designated by the county commissioner. *Id*. at *1. A paid job is clearly a benefit, unlike a decision to run for office or a decision to continue an already-started political campaign.

[19] *See United States v. Ciavarella*, 716 F.3d 705, 731 (3d Cir. 2013) ("A payment constitutes a bribe as long as the essential intent—a specific intent to give or receive something of value *in exchange* for an official act—exists.") (internal quotation and citation omitted), *cert. denied*, 134 S. Ct. 1491 (2014); *United States v. Wright*, 936 F. Supp. 2d 538, 545 (E.D. Pa. 2013) ("Bribery involves a 'quid pro quo—a specific intent to give or receive something of value in exchange for an official act.'") (citation omitted).

[20] *See Luzerne Cnty. Retirement Bd. v. Makowski*, 627 F. Supp. 2d 506, 561 (M.D. Pa. 2007) ("[A]ccepting a campaign contribution does not equal taking a bribe unless the payment is in exchange for an explicit promise to perform or not perform an official act.") (internal quotation and citation omitted).

ex-wife. The jury reasonably could have believed even that appellant expected and hoped that Wooten would make rulings favorable to appellant's husband in that litigation. But, in my view, there is insufficient evidence to permit a reasonable jury to conclude beyond a reasonable doubt that appellant conferred monetary benefits on Wooten as consideration for Wooten's joining the race, for her staying in the race, or for favorable judicial rulings in cases. Nor is there sufficient evidence to permit a reasonable jury to conclude beyond a reasonable doubt (1) that appellant's husband or Spencer conferred monetary benefits on Wooten as consideration for Wooten's joining or staying in the race, or for favorable rulings in cases or (2) that appellant intentionally promoted or assisted them in committing that offense.

Before delving into the evidence, I point out that the State makes no argument that appellant was guilty under the "offers" or the "agrees to confer" prongs of the bribery statute. Although the State alludes to these theories and cites general but inapplicable authority, it does not set forth any facts which would establish either theory, and I have found no such facts in the record evidence. The majority recites evidence at length, notes the allegations in the indictment of offer, agree to confer, and confer and distinguishes the *McCallum* decision on the basis that *McCallum* involved only conferring, not offering or agreeing to confer. The majority thus excuses the State from the necessity of establishing a bilateral agreement in this case because the State alleged offering and agreeing-to-confer theories, even though the evidence at most supports only the "conferring" theory. The majority ultimately upholds the bribery convictions based on the theories and allegations for offering, agreeing to confer, and conferring as they relate to proceeding and continuing to run and for favorable rulings, but not as to filing paperwork to run for judge. Like the State, the majority fails to identify any evidence supporting the convictions on the theory that appellant offered or agreed to confer benefits in exchange for Wooten's proceeding and continuing to run and for favorable rulings.

In my judgment, all six of the bribery counts rest only on actual conferral of benefits—specific payments of specific amounts of money. Accordingly, I will not discuss the submitted but unsupported theories that appellant illegally offered Wooten any benefits or illegally agreed to confer any benefits on Wooten.

### a.  Becoming a candidate

The State's first theory is that appellant bribed Wooten as consideration for Wooten to file the paperwork to become a candidate for the Republican nomination to be judge of the 380th Judicial District Court. The majority concludes it is unnecessary to address this theory but notes appellant's argument that paying or offering to pay someone to become a candidate is not bribery as the offense is defined in the statute. I would address appellant's argument and rule in her favor. Before Wooten filed her paperwork to run for the Republican nomination, Wooten was not a "public servant" as defined in the statute.[21] So even if appellant or someone in league with her paid or offered to pay Wooten money as consideration for Wooten's becoming a candidate, that conduct would not be bribery.

Moreover, I see no evidence that appellant did such a thing before Wooten filed her paperwork to become a candidate, nor that her husband or Spencer committed such conduct either with or without appellant's aid or encouragement. There is evidence that Spencer recruited Wooten to run against Judge Sandoval, but there is no evidence that he gave her any improper inducement to do so.

### b.  Remaining a candidate

The State's second theory is that appellant bribed Wooten as consideration for Wooten to proceed with or continue her campaign to become judge of the 380th Judicial District Court. The evidence supporting this theory fails on the essential element that the payments were made

---

[21] *See* TEX. PENAL CODE ANN. § 1.07(41) (West Supp. 2013) (defining "public servant").

"as consideration for" Wooten's decision to continue her campaign. Again, as *McCallum* makes clear, a benefit conferred in the mere hope of influencing the recipient is not bribery; the benefit must be conferred for the purpose of achieving an exchange for the recipient's decision or action.[22]

The critical defect in the evidence is the lack of any proof of the requisite intent and exchange—there is no evidence that appellant, David Cary, or Spencer conferred any benefit on Wooten as consideration for Wooten's decision(s) to stay in the primary race against Judge Sandoval. The State argues that it did not have to prove that Wooten ever actually considered dropping out of the race, and this is correct. But the State did have to prove that appellant or someone in league with appellant conferred benefits on Wooten as consideration for—that is, in exchange for—Wooten's staying in the race. Proving that the benefits were conferred, even under dubious circumstances, does not prove the specific intent required for bribery. In *McCallum*, there was evidence that McCallum, a litigant in a pending civil trial, encountered one of the jurors in a social setting after hours and bought champagne for her and her friends.[23] But the court of criminal appeals reversed McCallum's bribery conviction because there was no evidence that McCallum bought the champagne for the juror "in exchange for or in consideration of her vote as a juror."[24] The same is true in this case. The jury could infer that appellant wanted Judge Sandoval to lose and that she hoped Wooten would not abandon her campaign against him. But there is no evidence that appellant's transfers of money to Spencer or Spencer's

---

[22] *See generally McCallum*, 686 S.W.2d at 135–36, 139 (reversing bribery conviction for lack of evidence of "a bilateral agreement").

[23] *Id*. at 136–39.

[24] *Id*. at 139.

spending on Wooten's campaign were done in exchange for Wooten's continuance of her judicial campaign.[25]

Absent evidence that appellant, her husband, or Spencer conferred benefits on Wooten with the intent of accomplishing an exchange of benefits for Wooten's decision to stay in the race, any finding that appellant, her husband, or Spencer had the proscribed intent is based on speculation, not on evidence, and certainly not on proof beyond a reasonable doubt. There is no evidence to support appellant's bribery convictions under this theory of the case.

### c.    Judicial rulings

The State's last theory is that appellant bribed Wooten in consideration for Wooten's presiding over and issuing favorable rulings in cases in which appellant or her husband was a party. Again, the evidence falls short on the essential element of consideration—that appellant or someone in league with her conferred a benefit on Wooten *as consideration for* Wooten's decisions or other exercises of discretion in a judicial proceeding.

The evidence shows that David Cary was a party to a long-running family-law case pending in the 380th Judicial District Court, and the jury could infer that he thought Judge Sandoval was a bad and unfair judge. The evidence also shows that appellant intervened in her husband's case and also filed a separate lawsuit against Israel Suster that was transferred from another court to the 380th Judicial District Court in May 2008. And, as previously discussed, the evidence supports reasonable inferences that appellant transferred money to Spencer six times during the primary campaign and shortly thereafter at Spencer's requests (made either to appellant or to her husband), and that Spencer used that money to pay for Wooten's campaign

---

[25] As the majority notes, there was some evidence that Wooten had a line of credit. Neither side developed this evidence, nor did either side develop a detailed description of how much funding was necessary for Wooten to run a financially reasonable judicial campaign. The State argues that appellant's funds "were necessary for Wooten to run for and maintain her campaign for the seat of the 380th Judicial District Court," but there is absolutely no evidence that this is so. It is entirely possible that Wooten simply would have run a less-expensive campaign if appellant's money had not been available.

expenses. But the evidence does not permit an inference beyond a reasonable doubt that appellant paid the money, or Spencer spent the money with appellant's intentional aid or encouragement, as consideration for Wooten's judicial rulings or exercises of discretion in appellant's or David Cary's cases. The evidence is equally consistent with the proposition that appellant merely hoped or believed that Wooten would make better rulings than Judge Sandoval had. Under *McCallum*, such evidence is not sufficient to prove bribery.[26]

The after-the-fact evidence regarding Wooten's handling of the Carys' litigation does not aid the State's position. There was evidence that in early 2009 Spencer tried to dissuade Benavides from representing David Cary's ex-wife in her ongoing dispute with David Cary, and given the pattern of telephone calls around that time, the jury might reasonably infer that Spencer did so because he and David Cary did not want Wooten to recuse herself from David Cary's case. But this does not show that appellant, individually or through her husband or Spencer, had bribed Wooten a year earlier. It shows only that David Cary thought Wooten was preferable to other judges who might preside over his case if she recused herself. And Wooten did in fact recuse herself without making any rulings in David Cary's case. So Wooten's handling of David Cary's case constitutes no evidence that anyone had bribed her.

As to appellant's December 2007 lawsuit against Suster, there was evidence that in mid-2008 appellant fought to keep that lawsuit in County Court at Law No. 4 instead of having it transferred to the 380th Judicial District Court. There was also evidence that appellant did not press for certain discovery in her suit until Wooten had taken the bench in January 2009, that Wooten granted partial relief on a discovery motion filed by appellant, and that appellant later dismissed her suit. Again, this evidence does not show that appellant committed bribery, either personally or through her husband or Spencer. Wooten's granting of only part of the relief

---

[26] *See McCallum*, 686 S.W.2d at 134–35.

appellant sought does not tend to show that appellant or someone in league with her had previously bribed Wooten in exchange for favorable rulings. Nor does Wooten's failure to recuse herself in that matter indicate that appellant or someone in league with her had previously bribed Wooten.[27]

There was other evidence of conduct by appellant's husband and Spencer that put them in a bad light. There was evidence that in June 2009, Spencer and David Cary emailed each other about the Supreme Court's decision in *Caperton v. A.T. Massey Coal Co., Inc.*,[28] which imposed due-process limitations on elected judges' ability to hear cases involving their campaign contributors. Notably, *Caperton* was not a bribery case, and the Court did not question the subjective impartiality of the judge involved in that case.[29] The jury reasonably could have concluded that Spencer and David Cary were interested in the *Caperton* decision because appellant had supplied much of the money used in the Wooten campaign, and *Caperton* had the potential to require Wooten's recusal in future cases on constitutional grounds. But again, this does not show that appellant conferred benefits on Wooten in exchange for favorable rulings in her cases or David Cary's case. Nor does it show that Spencer or David Cary conferred benefits on Wooten in exchange for favorable rulings, with appellant's intentional aid or encouragement. Concern over *Caperton* is as consistent with a mere belief that Wooten would make favorable rulings as it is with prior acts of bribery.

The testimony of Jay Valentine also put Spencer and David Cary in a bad light. According to Valentine, David Cary said that he was trying to get Wooten elected, that Wooten

---

[27] In my view, judicial rulings are rarely persuasive evidence of bribery. The State can always argue that rulings favorable to the person accused of bribery demonstrate a quid pro quo, and that rulings against that person are made only to cover the parties' tracks, even if those rulings are perfectly reasonable under the law and the facts. The State can argue that rulings that split the difference, like Wooten's ruling on appellant's motion, are sinister from both angles. Only a truly outlandish ruling that is utterly divorced from the facts and law of the case might constitute some evidence of bribery—and even then, the ruling might reflect only the judge's lack of common sense rather than bribery.

[28] 556 U.S. 868 (2009).

[29] *Id.* at 882.

was going to change the rulings in David Cary's family-law case, and that Spencer "fixed his situation with the judge and was going to get his situation reversed." Valentine also testified that Spencer told Valentine that Spencer was able to get Wooten elected and that "he owned her." There is no evidence that appellant was present when any of the statements described by Valentine were made.

In summary, I would hold that the evidence in this record is insufficient to prove that appellant, Spencer, or David Cary conferred a benefit on Wooten as consideration for favorable judicial rulings once Wooten took office. Specifically, there is no evidence that any of the three alleged conspirators reached an *agreement* to an illegal exchange with Wooten.

Moreover, even assuming there was sufficient evidence that Spencer committed bribery, for appellant to be guilty of his act, the State had to prove appellant solicited, encouraged, or aided in committing the offense "with intent to promote or assist the commission of the offense."[30] Although appellant's transfers of money to Spencer may have aided him in committing the offense, there is still no evidence that she acted with the intent of promoting or assisting the commission of the offense of bribery. There is no evidence that she knew of any understanding, express or tacit, between Spencer and Wooten that Wooten would make favorable judicial rulings in David Cary's litigation in exchange for the campaign expenditures. For all the evidence shows, appellant may have helped finance Wooten's campaign in the mere hope of influencing Wooten—or in the mere hope of defeating Judge Sandoval—without knowledge of any agreement Spencer may have struck with Wooten and without any intent to promote such an illegal agreement.

---

[30] TEX. PENAL CODE ANN. § 7.02(a)(2).

### 4.      Conclusion

The State did not prove that the exception found in section 36.02(d) did not apply. Moreover, the State failed to prove beyond a reasonable doubt that appellant committed the elements of section 36.02(a)(1) or (a)(2), either individually or under the law of parties. I would reverse her bribery convictions and acquit her of those charges.

### OTHER CRIMES

Appellant's conviction for money laundering stands or falls with her bribery convictions. Because I conclude that appellant's bribery convictions are supported by insufficient evidence, I would also reverse her conviction for money laundering.

Appellant's conviction for engaging in organized criminal activity stands on a slightly different footing. The State submitted three theories of this crime to the jury. One theory was that appellant participated in a combination to commit bribery and another was that appellant participated in a combination to commit money laundering in connection with bribery. Both of those theories fail because of the insufficiency of the evidence to support the commission of bribery at all. The third and final theory of engaging in organized criminal activity was that appellant participated in a combination to commit tampering with a governmental record, specifically Wooten's preparation and filing of personal financial statements that did not identify appellant, David Cary, or Spencer as people who had given Wooten loans or gifts during the relevant time period. This theory is unaddressed by the majority because it is unnecessary to the majority's disposition of the case. For present purposes, it is enough for me to state my conclusion that there is no evidence in the record that appellant intentionally participated in any combination for the purpose of having Wooten commit the offense of tampering with a government record.

I would reverse appellant's convictions for engaging in organized criminal activity and money laundering based on insufficiency of the evidence, and I would acquit her of those charges.

**EXCLUSION OF EVIDENCE**

I also disagree with the majority's conclusion that appellant failed to preserve her fourth issue on appeal. At trial, appellant offered into evidence some findings of fact and conclusions of law from a trial judge who presided over David Cary's family-law case after Wooten recused herself. The findings were favorable to David Cary and critical of his ex-wife. The trial judge excluded the evidence. On appeal, appellant argues that the evidence was relevant and admissible to show that David Cary did not need to bribe a trial judge to obtain favorable rulings, and thus that he lacked the intent to commit bribery. The majority refuses to consider the merits of appellant's argument, concluding that appellant presented a different argument for admissibility in the trial court. According to the majority, appellant's only argument for admissibility in the trial court was that the findings of fact and conclusions of law showed that David Cary's ex-wife was being "stubbornly litigious."

I would conclude that appellant adequately preserved error in the trial court. She did not argue precisely that the findings of fact and conclusions of law were admissible to show that David Cary did not need to bribe a judge in order to win his case. But she did argue, albeit not very clearly, that the findings of fact and conclusions of law showed that David Cary's position was right. The record shows the following argument by appellant's counsel:

> Counsel: Judge, we spent, I don't know, four days proving that David Cary, and by way of David Cary, that Stacy Cary must also be stubbornly litigious. Well, here's the proof that this stubborn litigiousness **was on the right side of right. They were doing the right thing**. This Jennifer Cary character is the one being stubbornly litigious.

–22–

The Court: I think in the end, all that's irrelevant. I think there's been evidence that both sides were litigious and was heated. I don't think who ultimately prevailed in the end on the custody case makes any difference.

Counsel: Judge, I think it goes to show she was the one bringing the heat, not us, **and that we're just trying to do the right thing. That's why we have courts**.

(Emphases added.) In other words, appellant's counsel argued to the trial judge that the findings of fact and conclusions of law were admissible to show that David Cary was in the right in his child-custody litigation against his ex-wife. Appellant has made the argument with greater detail on appeal, but there is nothing wrong with that; arguments made in the heat of trial need not satisfy standards of appellate eloquence in order to preserve error.

I would conclude that appellant's fourth issue was sufficiently preserved in the trial court. Given that I would reverse all of her convictions, I will refrain from addressing the merits of appellant's fourth issue.

## CONCLUSION

I would reverse all of appellant's convictions. Because the majority does not, I respectfully dissent.

/Kerry P. FitzGerald/

KERRY P. FITZGERALD
JUSTICE

Do Not Publish
Tex. R. App. P. 47
121421DF.U05

–23–