PD-0445-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/2/2015 11:37:36 PM
Accepted 10/5/2015 7:53:11 AM
ABEL ACOSTA
CLERK

**APPELLANT REQUESTS ORAL ARGUMENT/
ORAL ARGUMENT GRANTED**


**IN THE COURT OF CRIMINAL APPEALS OF TEXAS**

_____

**No. PD-0445-15**

_____

**THE STATE OF TEXAS, Appellant**

**v.**

**DAVID FREDERICK CARY, Appellee**

FILED IN
COURT OF CRIMINAL APPEALS

October 5, 2015

ABEL ACOSTA, CLERK

**On Appeal from the Court of Appeals, Fifth District of Texas at Dallas
Court of Appeals No. 05-13-01010-CR**

_____


<u>**APPELLEE'S BRIEF**</u>


John M. Helms
Texas Bar No. 09401001
BRODEN, MICKELSEN, HELMS &
SNIPES, LLP
2600 State Street
Dallas, Tx 75204
Tel:  (469) 951-8496
Fax: (214) 720-9594
john@johnhelmslaw.com

ATTORNEY FOR APPELLEE,
DAVID FREDERICK CARY

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………..…….…….............i

INDEX OF AUTHORITIES……………………………………………………....iv

STATEMENT REGARDING ORAL ARGUMENT……………………………...1

STATEMENT OF FACTS……………………………………………………………1

    A.    INTRODUCTION...........................................................................1

    B.    DAVID CARY'S DIVORCE PROCEEDINGS IN JUDGE
        SANDOVAL'S COURT.......................................................................3

    C.    DAVID CARY'S ATTEMPTS AT LEGISLATIVE REFORM
        AND HIS INTRODUCTION TO STEPHEN SPENCER....................6

    D.    STEPHEN SPENCER RECRUITS SUZANNE WOOTEN TO
        RUN...................................................................................................8

    E.    MS. WOOTEN'S CAMPAIGN.........................................................9

    F.    MS. WOOTEN BECOMES JUDGE OF THE 380TH COURT
        AND PROMPTLY RECUSES HERSELF FROM DAVID
        CARY'S CHILD CUSTODY CASE……………………………..12

SUMMARY OF ARGUMENT…………………………………….............13

ARGUMENT…………………………………………………………...14

I.    STANDARD OF REVIEW AND OVERVIEW OF THE BRIBERY
    CHARGES ……………………………….......................................14

    A.    STANDARD OF REVIEW.......................................................14

    B.    THE BRIBERY CHARGES IN THIS CASE…………...............15

        1.    ALL CHARGES WERE EITHER BRIBERY OR A
            CHARGE THAT INCORPORATED
            BRIBERY………………………………..............15

2.    THE BRIBERY SUBSECTIONS CHARGED IN THIS CASE..…...……………………………...............17

3.    ALL BRIBERY ALLEGATIONS CHARGE THE BRIBING OF MS. WOOTEN TO BECOME A CANDIDATE, TO CONTINUE TO RUN FOR OFFICE, AND MAKING FAVORABLE RULINGS.......……………………………18

II.    ARGUMENTS REGARDING THE STATE'S ISSUES PRESENTED…..21

A.    <u>RESPONSE TO STATE'S ISSUE 1</u>:  THE COURT OF APPEALS CORRECTLY CONCLUDED THAT THE STATE FAILED TO PROVE BRIBERY BY SOMETHING OTHER THAN "POLITICAL CONTRIBUTIONS" BEYOND A REASONABLE DOUBT..…………………………………..…………...…….21

1.    BECAUSE OF ITS CHARGING DECISION, THE STATE WAS REQUIRED TO PROVE, BEYOND A REASONABLE DOUBT, THAT BRIBERY WAS ACCOMPLISHED BY SOMETHING OTHER THAN "POLITICAL CONTRIBUTIONS"...……………………………………21

2.    THE COURT OF APPEALS CORRECTLY CONCLUDED THAT THE STATE FAILED TO PROVE BRIBERY BY SOMETHING OTHER THAN "POLITICAL CONTRIBUTIONS"………………………………….22

3.    THE COURT SHOULD REJECT THE STATE'S CONTRARY ARGUMENTS..…………………………27

a.    MR. CARY'S "DEFENSIVE THEORY"…………….27

b.    THE "BRIBERY IS AN INCHOATE OFFENSE" ARGUMENT.………………………………….31

     c.    THE COURT OF APPEALS' INTERPRETATION
          AND APPLICATION OF THE DEFINITION
          OF "POLITICAL CONTRIBUTION"…………………..34

     d.    THE STANDARD OF REVIEW FOR
          SUFFICIENCY OF THE EVIDENCE..………………36

B.    RESPONSE TO STATE'S ISSUE TWO:  THE EVIDENCE
     WAS INSUFFICIENT TO SUPPORT THE BRIBERY
     CONVICTIONS………...............................................................37

     1.    THE EVIDENCE WAS INSUFFICIENT TO SUPPORT
          ANY OF THE THREE ALLEGED TYPES OF
          OFFICIAL ACTION..………………………………………….37

     2.    THE EVIDENCE WAS INSUFICIENT TO PROVE THAT
          MS. CARY HAD THE REQUISITE INTENT TO
          COMMIT BRIBERY…………………………………......43

C.    RESPONSE TO THE STATE'S ISSUE THREE:  THE EVIDENCE
     WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS FOR
     ENGAGING IN ORGANIZED CRIMINAL ACTIVITY AND MONEY
     LAUNDERING………………………………………………47

CONCLUSION…………………………………………………...…48

# INDEX OF AUTHORITIES

**Statutes/Rules:**

Texas Election Code § 251.001(2)…………………………………………………..24

Texas Election Code § 251.001(3)………………………………………………….23, 24

Texas Election Code § 251.001(5) ………………………………….…….………..23

Texas Penal Code § 1.07 (a)(41)…………………………………………………....38

Texas Penal Code § 2.01...................................................................................27

Texas Penal Code § 2.02(b)…………….....................................21, 22, 28, 30

Texas Penal Code § 7.02 (a)……….....…....…………………………….......36

Texas Penal Code § 34.01 (1)……….…………....…...………….……………17

Texas Penal Code § 34.02....................................................................................16

Texas Penal Code § 36.02(a)(1)…………………………....…………….18, 32, 38, 43

Texas Penal Code § 36.02(a)(2)…………………………….......………18, 32, 38, 43

Texas Penal Code § 36.02(a)(1), (2)……………………………..............18, 21, 32, 37

Texas Penal Code § 36.02(a)(1), (2), (3)……………………………......…17, 23

Texas Penal Code § 36.02(a)(1), (2), (3), (4)..……………………………...........17

Texas Penal Code § 36.02 (a)(4)………………………….....……..1, 14, 37, 41

Texas Penal Code § 36.02(d)……………………………………17, 21, 23, 30

Texas Penal Code § 36.09………………………………………...………19

Texas Penal Code § 37.10 (a)(5)…………………………………….............…16

Texas Penal Code § 71.02 (a)……………………….………….............16

## Cases:

*Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2012) (Cochran, J. concurring)………………………….....………………………….……15

*Caperton v. A.T. Massey Coal Co.*,  556 U.S. 868 (2009).....................................46

*David Cary v. State*, No. 05-13-01010, slip op. at 11 (Tex. App.—Dallas, March 25, 2015)…………………………………………………...…*passim*

*Stacy Cary v. State*, No. 05-12-01421-CR, 2014 WL 42612133 (Tex. App—Dallas 2014)…………………………………………23, 24, 39, 40, 46

*Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006)...............................27

*Ex parte Thompson,* 179 S.W. 3d 549 (Tex. Crim. App. 2005)……....……….…36

*Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011)................................15

*Hill v. State,* 883 S.W.2d 765 (Tex. App.--Amarillo 1994, pet. ref'd)……...........36

*Homan v. State,* 662 S.W.2d 372, 374 (Tex. Crim. App. 1984) (en banc)..............27

*Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007)…………......15, 45, 46

*Hubbard v. State*, 668 S.W.2d 419 (Tex. App—Dallas 1984, pet.granted on other grounds)……………………………………………………...……19, 20

*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979)....................14, 15, 36, 45

*M., K., & T. Ry. V. Eyer*, 96 Tex. 72, 74-75, 70 S.W.529, 529-30 (1902)..............28

*Martinez v. State*, 696 S.W.2d 930, 933 (Tex. App.—Austin 1985, pet. ref'd)19, 32

*McCallum v. State*, 686 S.W.2d 132, 136 (Tex. Crim. App. 1985)…..............19, 40

*Mustard v. State*, 711 S.W.2d 71, 75 (Tex. App.—Dallas 1986, no pet.)...............33

*Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999).........................28, 29

*Ripkowski v. State*, 61 S.W.3d 378, 389 (Tex. Crim. App. 2001).........................28

*Willeford v. State*, 72 S.W.3d 820, 823 (Tex. App.—Fort Worth 2002)................29

*Winfrey v. State*, 2013 Tex. Crim. App. Lexis 431, 10-12
(Tex. Crim. App. Feb. 27, 2013)………………………………...……….......…15

**Treatises:**

George E. Dix and Robert O. Dawson, 43 *Texas Practice—Criminal Practice and Procedure* § 42.141 (Supp. 1999)..................................................................28

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument, which the Court has already granted.  This case involves multiple actors, the interplay of election law, and circumstantial evidence.  Appellant believes that the facts and the application of the law are sufficiently complicated that oral argument would benefit the Court.

## STATEMENT OF FACTS

### A.    **Introduction.**

The State's Brief's Statement of Facts completely fails to explain the evidence that the State used to try to prove bribery and even how the alleged bribery worked.  This is not surprising because, as explained below, the State charged, presented, and argued this case based on the fundamentally flawed premise that a "political contribution" under the bribery statute does not include campaign contributions that are not properly reported or that are otherwise illegal.

Because the State charged bribery by something other than a political contribution, the State was required to *negate* bribery by political contribution beyond a reasonable doubt.  But the only possible evidence that could potentially support bribery was through political contributions.  Thus, the State's evidence effectively disproved its own case.

On appeal, the State now tries to run as far away as possible from the actual evidence at trial and how it could possibly support a bribery conviction. For example, for obvious reasons, the State's Brief's Statement of Facts does not even explain the flow of money that supposedly constituted the "benefit" to the public official, Suzanne Wooten ("Ms. Wooten"). Instead, it simply says that defendant David Cary ("Mr. Cary"), caused money to be paid to Ms. Wooten's campaign management consultant, Stephen Spencer ("Mr. Spencer"), as an "intermediary" and that Mr. Spencer offered or conferred an undefined "benefit" to Ms. Wooten. State's Brief at 4. This description is, frankly, disingenuous, because it invites the impression that Mr. Spencer gave something of value directly to Ms. Wooten. This did not happen, and there was absolutely no evidence at trial that it did.

Instead, in the light most favorable to the verdict, the evidence showed that Mr. Spencer's consulting firm, SpenOff Strategies, received money from the Mr. Cary and his wife, Stacy Cary, and that, through SpenOff Strategies, Mr. Spencer paid for campaign expenses for Ms. Wooten's campaign at times when the campaign allegedly had not yet raised enough money to pay for them. SpenOff Strategies later billed the Wooten campaign for these expenses, and the campaign paid all of these bills with

legitimately-raised money. These funds advanced to the campaign were the only possible benefit allegedly offered to, or conferred on, Ms. Wooten. There was no evidence whatsoever that Ms. Wooten, personally, was ever offered, or ever received, anything directly or indirectly from the Cary's.

The underlying facts in this case involve efforts to unseat a Collin County judge who had a reputation for being vindictive, biased, and abusive. That judge, Charles Sandoval ("Judge Sandoval"), had presided over the 380th Judicial District Court of Collin County, Texas. He was defeated in the 2008 Republican primary by a Ms. Wooten. There was no Democratic opponent in the general election, and Ms. Wooten therefore became judge of the 380th Judicial District Court.

The State's bribery theory is an attempt to shoehorn potential election reporting and campaign finance issues into a bribery case. It does not fit. Mr. Cary did not commit bribery or any of the other crimes charged, each of which includes bribery as an element.

**B.** **David Cary's Divorce Proceedings In Judge Sandoval's Court.**

In 2003, Mr. Cary filed for divorce from his wife, Jennifer Cary. TR 11 at 1221 (State's Tr. Ex. 7). The case was assigned to Judge Sandoval's court. *Id.*

In the mid-2004, the parties reached a mediated settlement, and on October 5, 2004, the court approved the mediated settlement and entered a Final Divorce Decree. TR 11 at 1233, 1245 (State's Tr. Ex. 7). The Final Divorce Decree made David and Jennifer Cary Joint Managing Conservators over their two young daughters who were born prematurely and who were both special needs children. *Id.* at 1245; TR 2 at 109-110.

Barely more than six months later, however, on April 13, 2005, Jennifer Cary claimed that circumstances had changed and filed a Petition to Modify the Final Divorce Decree. TR 11 at 1316 (State's Tr. Ex. 7). In that Petition, which was also assigned to Judge Sandoval's court, Jennifer Cary raised a dispute over the care and counseling for the two daughters. She asked the court to give her the exclusive right to designate the children's residence and to modify the visitation schedule to reduce Mr. Cary's visitation. *Id.* After this point, the litigation became heated.

During the course of the litigation, Mr. Cary's attorney obtained evidence of *ex parte* contacts between opposing counsel and Judge Sandoval. TR 11 at 1324. He therefore filed a motion to recuse Judge Sandoval on April 28, 2006. *Id.* Ultimately, the motion was unsuccessful, and Judge Sandoval remained on the case. TR 11 at 1401 (State's Tr. Ex. 7).

After this, Mr. Cary began to feel more and more like Judge Sandoval was biased against him and was treating him unfairly.

Judge Sandoval had a reputation in Collin County for being vindictive and abusive. Testimony indicated that he was not well liked, that he was "capricious" in the way he judged, and concern that clients would not get "a fair shake" in his court. TR 3 at 132, 203. He was also the most appealed and the most reversed judge in Collin County. TR 4 at 160.

On December 1, 2006, Judge Sandoval granted Jennifer Cary's Petition to Modify in full. He removed Mr. Cary as Joint Managing Conservator and appointed Jennifer Cary as Sole Managing Conservator of the girls. TR 11 at 1405 (State's Tr. Ex. 7). He also awarded Jennifer Cary attorney's fees of $416,543.16. *Id.* Mr. Cary did not appeal any aspect of this order.

On January 23, 2007, Mr. Cary filed a Petition to Modify the child support schedules. He also requested a transfer of the matter to Dallas County, where he alleged that the children had primarily lived over the past six months. TR 11 at 1436 (State's Tr. Ex 7). Judge Sandoval denied this petition and imposed sanctions of $50,000 on Mr. Cary and his lawyer. TR 11 at 1441 (State's Tr. Ex. 7); TR 2 at 134-35.

Notably, an unquestionably unbiased judge--Senior Judge John McCraw—was ultimately appointed to the child custody matter.  Judge McCraw vacated Judge Sandoval's rulings.  Instead, he gave Mr. Cary the exclusive right to determine the girls' primary residence and ordered that the girls should live with him during the week.  TR 11 at 8055, 8057-62.  Judge McCraw specifically found that the mother had not acted in the best interests of the children by, among other things, failing to provide optimal arrangements for their attendance at and transportation to their special needs school, deliberately alienating them from Mr. Cary, and falsely accusing him of molestation, mental and physical abuse of the girls, and abuse of alcohol and drugs.  *See id.*  In addition, Judge McCraw vacated Judge Sandoval's ruling.  TR 2 at 149.  Thus, an unbiased judge who no one claims to have been bribed ultimately ruled completely in Mr. Cary's favor.

 C. **David Cary's Attempts At Legislative Reform And His Introduction To Stephen Spencer.**

In light of his experiences, Mr. Cary became increasingly disillusioned with the way Texas courts handle family law and parental rights issues.  He began considering whether there were potential legislative solutions and began talking to people in Austin.  TR 3 at 18.

At the same time, Mr. Spencer was talking to members of the State Legislature and their staffs about similar issues.  TR 3 at 11, 15, 169.  Mr.

Spencer had an interest in parental rights—particularly the rights of parents compared to grandparents--and he had connections to an organization called the Texas Home School Counsel, which also had similar interests. *See id.*; TR 3 at 144.

The General Counsel for Texas Speaker of the House Tom Craddick had been in contact with both the Cary's and Mr. Spencer, and he introduced them by email because of their shared interests. TR 3 at 20, 182.

In early October of 2007, Mr. Spencer drove to the Carys' home in Dallas to meet with them. TR 3 at 188. Mr. Spencer and the Cary's discussed Mr. Cary's interest in legislation about parental rights. *See id.* Mr. Spencer had experience with the legislative process and took an interest in Mr. Cary's desire to make policy changes at the state level. TR 3 at 187-92, 195, 197-99.

At around the same time, in addition to possible legislative solutions, Mr. Spencer had been discussing with Tim Lambert of the Texas Home School Coalition, the possibility of trying to unseat judges who were not following the law in the area of parental rights. TR 3 at 176-78. After talking to David Cary, Mr. Spencer went to Collin County and reviewed David Cary's divorce file. TR 3 at 200. After doing research on Judge Sandoval and speaking to lawyers, Mr. Spencer concluded that Judge

Sandoval lacked a family law background, had a very poor reputation, and was not applying the law correctly. TR 3 at 200-203, 206. Mr. Spencer ultimately decided to try to find someone who could run against Judge Sandoval. TR 3 at 202-204.

**D.     Stephen Spencer Recruits Suzanne Wooten To Run.**

In or around mid-November 2007, Mr. Spencer began speaking to several lawyers in Collin County with family law backgrounds about running against Judge Sandoval. TR 3 at 204-211. He was turned down several times before he contacted Ms. Wooten. *See id.*; TR 6 at 196.

Mr. Spencer got Ms. Wooten's name from the chairman of the Collin County Democratic Party. TR 3 at 216. The Democratic Party had been trying to recruit Ms. Wooten to run against Judge Sandoval as well, but after careful consideration, Ms. Wooten had declined the offer, presumably because it is almost impossible for a Democrat to win in Collin County. TR 3 at 130-32, 218-19.

Ms. Wooten had expressed interest to others in running for judge before. TR 3 at 63. She was a good candidate because she was a family lawyer and was well-respected. TR 3 at 58-60, 105-105, 151. Ms. Wooten had started and run her firm's Collin County family practice office. TR 3 at

60-61. She had an excellent reputation as a lawyer and for her ethics, which were unquestioned. TR 3 at 104-105, 151.

In his initial conversation with Ms. Wooten, Mr. Spencer told her that he had already lined up an experienced political consultant, which he had done, whose name was Hank Clements. TR 4 at 23-26. Through his contacts, including the Texas Home School Counsel, Mr. Spencer could also offer grass-roots support for getting her name out, getting endorsements, and getting "boots on the ground." TR 4 at 34; TR 3 at 144.

Ms. Wooten agreed to enter the race as a Republican. Mr. Spencer, through his company, SpenOff Strategies, performed campaign management services for the campaign. TR 4 at 29. Ms. Wooten filed papers on January 2, 2008. TR 3 at 222, 224; TR 11 at 2294 (State's Tr. Ex. 61).

As a practical matter, because there would be no Democratic opponent in the general election, the Republican primary would decide the winner, and Ms. Wooten's campaign would only last from January 2, 2008 through March 4, 2008—only about two months. TR 3 at 70, 219.

## E. Ms. Wooten's Campaign.

The Wooten campaign was not only Ms. Wooten's first campaign, but it was also Mr. Spencer's first campaign as well. TR 7 at 15. Working with Mr. Clements on strategy and media buying, Mr. Spencer's company

provided the campaign with a "turnkey" arrangement in which Mr. Spencer's company would pay for certain campaign expenditures, such as advertising, and send the campaign an invoice for reimbursement of the expenditures. TR 4 at 25-26, 91, 176, 189. This arrangement, in which expenses were bundled into single invoices, allowed Ms. Wooten, who was also running her law practice, to avoid having to handle payment of individual bills and dealing with vendors. TR 5 at 126. Ms. Wooten would then pay the invoices from Mr. Spencer when she received them and report the payments on her campaign finance reports. TR 4 at 189, TR 5 at 60.

Mr. Clements testified that having a campaign consultant operate this way is not unusual and that he has done it in the past. TR 7 at 24-25. Even the State's election ethics expert agreed that he was aware that some candidates handle billing and reporting in that way. TR 6 at 69-70.

The evidence at trial showed that Stacy Cary was involved with requesting or causing monetary transactions through which payments were made to Mr. Spencer. Mr. Spencer testified that these payments were for work he did for Stacy Cary on several consulting projects. From January 4, 2008 to March 14, 2008, the total amount of payments from the Cary's to Mr. Spencer was $150,000. There was no evidence that either of the Cary's had any contact with Ms. Wooten.

The Republican primary was on March 4, 2008. Ms. Wooten won the primary and did not have an opponent in the general election. According to the State, the Wooten campaign reimbursed Mr. Spencer's company for approximately $102,000 of campaign expenditures. TR 5 at 114. This $102,000 represented money that Mr. Spencer's company had spent "to run the campaign." TR 8 at 111. The invoices from Mr. Spencer's company were paid in full from campaign funds, and the State does not contend that any of the funds were raised improperly. TR 8 at 118.

The State *does* claim that Mr. Spencer used the money that he received from Stacy Cary to pay for the $102,000 in campaign expenses and that he would not have been able to pay for those expenses without the transfers from Stacy Cary. The State also claims that Mr. Spencer delayed sending invoices to the campaign until after the campaign had raised enough money to pay them. The State claims that the transfer of money from Stacy Cary to Mr. Spencer was for use on the campaign and that Mr. Spencer used that money to pay for campaign expenses like radio ads that the campaign could not yet afford. This was the bribe, according to the State.

The State's own forensic auditor and summary witness admitted, however, that there was no evidence that Ms. Wooten knew either that Mr. Spencer needed money from somewhere else to pay the campaign expenses

or that Mr. Spencer was receiving money from either of the Cary's. TR 8 at 55-56. Indeed, there was no evidence that Ms. Wooten knew about the Carys' relationship with Mr. Spencer at all. Mr. Spencer testified that he did not tell Ms. Wooten about his relationship with the Cary's. TR 4 at 173-74. Mr. Clements testified that he never met the Cary's at any time during the campaign and never even heard their names mentioned. TR 7 at 21.

**F. Ms. Wooten Becomes Judge of the 380th Court And Promptly Recuses Herself From David Cary's Child Custody Case.**

Ms. Wooten became judge of the 380th District Court and inherited Mr. Cary's child custody case. When she had an opportunity to preside over it, however, she immediately recused herself *on her own initiative* before making any rulings.

During a hearing, she indicated, on her own, that she felt she should recuse herself, mostly because her former campaign treasurer, Alma Benavides, was representing Mr. Cary's ex-wife and it was too close to the end of the campaign. TR 3 at 77-81. She therefore asked that a motion to recuse her be filed, which it was, and she granted it. *Id.* Thus, the supposedly bribed judge immediately pulled herself off of the case involving the custody and welfare of Mr. Cary's special needs daughters—the only case that mattered to him.

## SUMMARY OF ARGUMENT

This Court should affirm the ruling of the Court of Appeals dismissing all of Mr. Cary's Convictions.

First, the Court of Appeals correctly concluded that the sections of the bribery statute under which Mr. Cary was charged require proof beyond a reasonable doubt that Mr. Cary committed bribery by something other than a "political contribution." The State's proof at trial, however, not only failed to do so, but it affirmatively proved Mr. Cary's innocence, because the only possible benefits offered, conferred, or agreed to be conferred, were "political contributions.

Second, this Court should affirm the Court of Appeals because the evidence was insufficient to support the bribery convictions. The Superseding Indictment alleges bribery as consideration for Ms. Wooten's decision to become a candidate, her continuing to be a candidate, and for favorable rulings. The evidence was insufficient as to each of these. Ms. Wooten's decision to become a candidate cannot support the conviction because the bribery statute does not apply to a decision to become a candidate. Continuing to run for office cannot support a bribery conviction because there no evidence to support it. There was also insufficient evidence of the commission of bribery as consideration for favorable rulings,

in particular, because there was no evidence that the alleged recipient would have known for whom to rule favorably. Additionally, there was insufficient evidence that Mr. Cary had the requisite intent to commit bribery for any reason.

Third, the Court should affirm the Court of Appeals' reversal of Mr. Cary's convictions for Engaging in Organized Criminal Activity ("EOCA"), and money laundering. Because bribery is the only predicate crime that can potentially support either of them, and because the evidence of bribery was insufficient, the evidence of EOCA and money laundering was insufficient as well.

## ARGUMENT

## I.

## STANDARD OF REVIEW
## AND OVERVIEW OF THE BRIBERY CHARGES

### A.   Standard of Review.

This Court has articulated the standard of review for sufficiency of the evidence as follows:

> We apply *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), as the standard for reviewing the sufficiency of evidence. "In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could

have found the essential elements of the crime beyond a reasonable doubt."

*Winfrey v. State*, 2013 Tex. Crim. App. LEXIS 431, 10-12 (Tex. Crim. App. Feb. 27, 2013) (quoting *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011)).

Under this standard, "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). "[T]here is no higher standard of appellate review than the standard mandated by *Jackson*." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J. concurring).

## B.    The Bribery Charges In This Case.

### 1.    All Charges Were Either Bribery Or A Charge That Incorporated Bribery.

Bribery is the linchpin of every charge against Mr. Cary. The Superseding Indictment charges Mr. Cary with bribery in six substantive counts (Counts II-VII). Each bribery count involves a separate payment by Stacy Cary to Mr. Spencer.

Bribery was also a critical component of the other two charges. Count I, Engaging in Organized Criminal Activity, incorporates the same bribery allegations. In order to commit the crime of Engaging in Organized

Appellee's Brief--Page 15

Criminal Activity, the Texas Penal Code requires, in pertinent part, proof beyond a reasonable doubt that a person "establish, maintain, or participate in a combination...to commit or conspire to commit one or more of" a list of predicate crimes. Tex. Pen. Code § 71.02(a). In this case, the State charged bribery as one of three predicate crimes. The other two are money laundering, which has bribery as its predicate offense, and tampering with a government record.

The jury was instructed that they should convict on Engaging in Organized Criminal Activity if they unanimously agreed, beyond a reasonable doubt, that Mr. Cary had established, maintained, or participated in a combination to commit or, as a lesser included offense, conspire to commit, any of the three predicate crimes--bribery, money laundering,[1] or tampering with a government record.[2]

Count VIII, money laundering, also stands or falls with the bribery charges. In pertinent part, the Texas money laundering statute makes it a crime if a person "knowingly...finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity." Tex. Pen. Code § 34.02(a)(4). For purposes of this

---

[1] Tex. Pen. Code §34.02. Subsection (a)(4) was charged in this case.
[2] Tex. Pen. Code § 37.10(a)(5). The State did not charge Mr. Cary with a substantive count of tampering with a government record.

case, "[c]riminal activity" means a felony offense. Tex. Pen. Code §

34.01(1). Count VIII alleges that the criminal activity was bribery.

Superseding Indictment, Count VIII.

**2.      The Bribery Subsections Charged In This Case.**

The Texas bribery statute has four operative subsections that delineate

the crime of bribery—Tex. Pen. Code §§ 36.02(a) (1), (2), (3), and (4).

Subsections (a) (1), (2), and (3) do not apply to a benefit that is "a political

contribution as defined by Title 15, Election Code." Tex. Pen. Code

§36.02(d). Only subsection (a)(4) applies if the benefit is a political

contribution. *See id.*

Subsection (a)(4), which applies to political contributions, requires

significantly more strict proof than the other subsections. Unlike

subsections (a) (1), (2), and (3), in order to prove bribery involving a

political contribution, the State must show "an express agreement to take or

withhold a specific exercise of official discretion" and that such exercise of

discretion "would not have been taken or withheld but for the benefit." Tex.

Penal Code § 36.02(a)(4). Moreover, the State is required to produce "direct

evidence of the express agreement." *Id.* Thus, an implied agreement and

circumstantial evidence of an express agreement are not enough.

Mr. Cary was only charged under sections 36.02(a)(1) and (2).

Superseding Indictment, Counts I-VIII.  Section 36.02(a)(1) states that "[a] person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another...any benefit as consideration for the recipient's decision, opinion, recommendation, or vote, or other exercise of discretion as a public servant, party official, or voter."  Tex. Pen. Code § 36.02(a)(1).

Similarly, section 36.02(a)(2) states that "[a] person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another...any benefit as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding." Tex. Pen. Code § 36.02(a)(2).

3. **All Bribery Allegations Charge The Bribing Of Ms. Wooten As Consideration For Becoming A Candidate, Continuing To Run For Office, And Making Favorable Rulings.**

Texas Penal Code sections 36.02(a)(1) and (2), under which Mr. Cary was charged, require proof that the "benefit" must be "as consideration for" specified types of official in the form of a decision or other exercise of discretion by a public servant or in an administrative or judicial proceeding. This Court has held that the "as consideration for" language refers to "a bilateral agreement--in effect an illegal contract to exchange a benefit as

consideration for the performance of an official function." *McCallum v. State*, 686 S.W.2d 132, 136 (Tex. Crim. App. 1985).

The requisite consideration need not actually be accepted by the public official, but there must be proof that the benefit was at least offered to the public official *in exchange for the enumerated official actions*. *See Martinez v. State*, 696 S.W.2d 930, 933 (Tex. App.—Austin 1985, pet. ref'd) (holding that the bribery statute requires proof that an offer or solicitation "was made by the accused with the purpose to promote or facilitate the exchange of the benefit for the official action").

The intended exchange of a benefit in return for official action is also what distinguishes the bribery statute from the gift statute. *See* Tex. Penal Code § 36.09 ("Offering Gift To Public Servant"). Offering or conferring a benefit to a public official in return for the public official's general favor may violate the gift statute (a Class A misdemeanor), but it is not a bribe (a second-degree felony). In *Hubbard v. State*, 668 S.W.2d 419 (Tex. App—Dallas 1984, pet. granted on other grounds), for example, this Court distinguished the bribery statute from the gift statute by explaining that the gift statute "is designed to discourage generally buying the favor of public officials," whereas the bribery statute involves "consideration [and] effecting an agreement." *Id.* at 421. Accordingly, a showing of the offering or

conferring of a benefit alone is not enough to prove bribery. The State must show that the benefit was offered or conferred "as consideration for" the official action.

The Superseding Indictment specifies three things for which the State claims the alleged benefits were consideration: "filing paperwork to run for Judge, proceeding and continuing with a campaign to unseat the incumbent elected Judge of the 380th Judicial District Court, and as Judge of the 380th Judicial District Court presiding over and issuing favorable rulings in cases in which the Defendant and Stacy Stine Cary are parties." Superseding Indictment, Counts I-VIII. As the State explained in closing argument: "Because we've got three methods of proving our case. We've alleged inducing her to run. They're inducing her to continue to run, and to rule." TR 9 at 18. As explained below, the evidence of each of these was insufficient, and none of them can support the conviction.

**II.**

## <u>ARGUMENTS REGARDING THE STATE'S ISSUES PRESENTED</u>

**A.     RESPONSE TO STATE'S ISSUE ONE: The Court of Appeals Correctly Concluded That the State Failed To Prove Bribery By Something Other Than "Political Contributions" Beyond A Reasonable Doubt.**

**1.     Because Of Its Charging Decision, the State Was Required to Prove, Beyond A Reasonable Doubt, That Bribery Was Accomplished By Something Other Than "Political Contributions."**

The Court of Appeals correctly held that the State's decision to charge bribery under Penal Code sections 36.02 (a)(1) and (a)(2) required the State to prove, beyond a reasonable doubt, that bribery occurred by something other than a "political contribution." This is because Penal Code section 36.02(a)(4)—bribery by "political contribution"—is an express exception to subsections (a)(1) and (a)(2). Section 36.02(d) states: "It is an exception to the application of Subdivisions (1), (2), and (3) of subsection (a) that the benefit is a political contribution as defined by Title 15, Election Code…." Tex. Penal Code § 36.02(d).

Since a "political contribution" is an exception to the subsections charged, under section 2.02(b) of the Texas Penal Code, the State had to negate the exception in the indictment and prove beyond a reasonable doubt that Mr. Cary committed bribery through something other than political

contributions. *See* Tex. Penal Code § 2.02 (b) ("The prosecuting attorney must negate the existence of an exception in the accusation charging the commission of the offense and prove beyond a reasonable doubt that the defendant or defendants conduct does not fall within the exception.").

Thus, the Court of Appeals correctly held that "it was the State's burden to prove beyond a reasonable doubt that the benefits to Wooten, in this case the payments to Spencer, were something other than political contributions." *David Cary v. State*, No. 05-13-01010, slip op. at 5 (Tex. App.—Dallas, March 25, 2015) (hereinafter "Court of Appeals Opinion"). The State does not disagree.

## 2. The Court of Appeals Correctly Concluded That The State Failed to Prove Bribery By Something Other Than "Political Contributions."

The Court of Appeals analyzed the Texas Election Code sections that define "political contribution" and correctly concluded that a "political contribution" includes a direct or indirect transfer of anything of value, including a loan, that is offered or given to a candidate or political committee with the intent that it be used in connection with a campaign for

elective office.  Court of Appeals Opinion at 5-6.[3]  Again, the State does not disagree.

Importantly, as the Court of Appeals noted, under the applicable statutory definitions, the fact that a campaign contribution exceeds applicable contribution limits or is not properly reported does not exclude it from being a "political contribution."  *See* Court of Appeals Opinion at 9.  Or, as the dissent in Stacy Cary's appeal put it, "But the definitions of 'contribution,' 'campaign contribution,' and 'political contribution' do not incorporate these other legal requirements [concerning reporting and contribution limits].  ***In other words, an illegal political contribution is still a political contribution***."  *Stacy Cary v. State*, No. 05-12-01421-CR, 2014 WL 4261233 at *43 (Tex. App.—Dallas 2014) (FitzGerald, J., dissenting) (emphasis added).[4]

---

[3]  *See* Texas Election Code § 251.001(2), (3), (5) (defining "political contribution," "campaign contribution," and "contribution").

[4]  Additionally, the bribery statute itself reflects a legislative intent to except all "political contribution[s]" from sections 36.02(a) (1), (2), and (3), regardless of whether they are illegal or properly reported.  Section 36.02(d) of the bribery statute excepts from those subsections "a political contribution as defined by Title 15, Election Code, or an expenditure *made and reported in accordance with* Chapter 305, Government Code," which deals with lobbying.  Tex. Penal Code § 36.02(d) (emphasis added).  Thus, the Legislature required lobbying expenditures under Chapter 305 of the Government Code to comply with the rules and reporting requirements of that chapter in order to be excluded, but it did not do so for political contributions.  This indicates that the Legislature intended all "political contributions," whether or not they were made and reported in accordance with Title 15 of the Election Code, to be excepted from sections 36.02(a)(1), (2), and (3).

On appeal, the State does not disagree with this. In the trial court, however, the State premised the way it charged, presented, and argued the case on the erroneous belief that a political contribution that is not properly reported is not a "political contribution." *See, e.g.,* TR 9 at 19 (arguing in closing that the payments to Mr. Spencer were not "political contributions" because they were "never reported"). The State based its prosecution of Stacy Cary on the same erroneous assumption.[5]

Consistent with its flawed understanding of the bribery statute, the State's only proof at trial, of any conceivable offer or conferring of a "benefit" to Ms. Wooten under the bribery statute, was that Mr. Cary and his wife, Stacy Cary, paid money to Suzanne Wooten's campaign management consultant, Mr. Spencer (through SpenOff Strategies), that Mr. Spencer (through SpenOff Strategies), spent a significant percentage of it on Wooten campaign expenses, that Mr. Spencer did not invoice the Wooten campaign

---

[5] In Stacy Cary's case, the prosecutor's only argument for why the payments from Ms. Cary were not "political contributions" was as follows:

> The next question is, is it a campaign contribution? **Well, for it to be a campaign contribution and to get this safe harbor, it has to be properly reported.** It's not in any of the campaign finance reports. We talked about that a little with Mr. Swihart. We had them in evidence if you wanted to look at them.

*See Stacy Cary v. State*, No. PD-1341-14, in the Texas Court of Criminal Appeals, TR 9 at 12 (emphasis added).

quickly enough, and that, according to the State, this allowed Mr. Spencer to make some expenditures on behalf of the Wooten campaign at times when the campaign did not yet have enough money raised to cover the expenditures.

Thus, the State's entire theory and all of its proof consisted of bribery by political contribution. For example, in opening statement, the prosecutor described the evidence as follows:

> What Spencer does is he creates a situation where he receives payments from Stacy Cary, and many of these are at the direction of David Cary….And the money is then used for the benefit of Suzanne Wooten. One hundred thousand dollars is spent on the campaign by March 4[th]….The bills don't ever get sent to Suzanne Wooten from Stephen Spencer until he—until she has the money? And why is that? The reason that is, is because we have these various laws dealing with campaign finance….When you raise money, you have to tell the public about it. If she had reported all these expenses and hadn't shown where she was raising the money, those were questions she would have to answer.

TR 2 at 52, 54.

Similarly, the State's own testimony repeatedly described the alleged benefit as direct or indirect transfers of value that were intended to be used by the Wooten campaign. For example, the State's forensic auditor and summary witness testified that the $102,000 that Mr. Spencer spent on campaign expenses "was actually David Cary's wife's money," that it was spent "to benefit the campaign," and that it was used "to run the campaign."

TR 8 at 72, 76, 111. In fact, he described the "flow of money" as follows:

"And then [Mr. Spencer] would get an infusion of money from Stacy Cary which then he was able to make campaign expenditures for the Wooten Campaign." TR 7 at 121-22.

The State also elicited the following from Stephen Spencer:

Q: [Y]ou're talking about all the money that you fronted the campaign, is that right? Are those the resources you were talking about?

A: No.

Q: All the money that the only reason it exists, the only reason that Suzanne Wooten was able to use that money was because Stacy Cary gave it to you?

A: I'm sorry. Repeat that. Would you repeat your question?

Q: Without Stacy Cary's money, Suzanne Wooten doesn't have that money that she can use on her campaign?

A: No. She wouldn't have it through me. No.

TR 4 at 128-29.

Thus, the alleged "benefit" to Ms. Wooten—money for the campaign--fit squarely within the definition of "political contribution." As the Court of Appeals correctly concluded, the result was the failure to prove an essential element of the case:

Boiled down, the State's theory in the case was that the Cary's secretly funded Wooten's campaign for elective office. ***And the only evidence of a benefit to Wooten in this case was that Stacy Cary***

*gave money to Spencer and Spencer used it in connection with Wooten's campaign.*

\* \* \* \*

We conclude that the State's evidence proved that the only benefits to Wooten were the transfers from Stacy Cary to Spencer, which the State argued were payments made to fund her campaign. As a result, the State did not meet its burden to prove bribery beyond a reasonable doubt by something other than a political contribution.

Court of Appeals Opinion at 6, 10-11 (emphasis added); *see also id.* at 7-9 (summarizing the State's evidence).

### 3. The Court Should Reject the State's Contrary Arguments.

#### a. Mr. Cary's "defensive theory."

On appeal, the State first argues that Mr. Cary's "defensive theory" was that the payments to Spencer had nothing to do with Ms. Wooten or her campaign and that this somehow relieved the State of its burden of proving, beyond a reasonable doubt, bribery by something other than a political contribution. The State is incorrect.

In criminal cases, "the burden of proof is always on the State and always 'beyond a reasonable doubt.'" *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006). This principle applies to each element of the crime charged, including, in this case, the requirement that the State prove bribery by something other than a political contribution. *See Homan v. State,* 662 S.W.2d 372, 374 (Tex. Crim. App. 1984) (en banc); Tex. Penal Code § 2.01;

Tex. Penal Code § 2.02(b) (statutory exceptions must be disproved beyond a reasonable doubt). Thus, Mr. Cary's "defensive theory" did not relieve the State of proving bribery by something other than a political contribution.

The State then argues that Mr. Cary should be estopped from arguing that the State failed to meet its burden of proof under the doctrine of invited error. The Court should reject this argument because invited error does not apply here and because only the State is to blame for its fundamentally flawed prosecution of Mr. Cary.

According to the case cited by the State, the doctrine of invited error "defines error of which a party may complain as excluding those actions of the trial court actually sought by the party in that tribunal." *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (quoting George E. Dix and Robert O. Dawson, 43 *Texas Practice—Criminal Practice and Procedure* § 42.141 (Supp. 1999)). Thus, invited error applies "[w]here a party by a request for a ruling leads the court into error." *Id.* (quoting *M., K., & T. Ry. V. Eyer*, 96 Tex. 72, 74-75, 70 S.W.529, 529-30 (1902)); *see also Ripkowski v. State*, 61 S.W.3d 378, 389 (Tex. Crim. App. 2001) (quoting *Prystash*). As the Fort Worth Court of Appeals summarized, "The court of criminal appeals has applied invited error when the defendant 'invites' the trial court to do something, the trial court does the act, and

thereafter the defendant complains of the trial court's action." *Willeford v. State*, 72 S.W.3d 820, 823 (Tex. App.—Fort Worth 2002). Examples include a defendant requesting a jury instruction and then complaining on appeal that the trial court gave it, or requesting that a jury charge be deleted and complaining on appeal that the trial court did not give it. *See Prystash*, 3 S.W.3d at 531-32.

The doctrine of invited error does not apply here. Mr. Cary does not complain on appeal of any action or ruling by the trial court that he induced. Rather, he appeals because the evidence was insufficient to prove that he committed bribery by something other than a "political contribution," which the State was required to prove beyond a reasonable doubt. Nor did Mr. Cary take the position, at any point, that if the State's theory of the case was correct, then the transfers were not political contributions under the bribery statute. Thus, the doctrine of invited error does not apply.

More importantly, the reason that the State failed to disprove that the benefit was a political contribution, and the reason that the State actually negated this element, was ***not*** because of something Mr. Cary "invited." Rather, it was because the State charged, presented, and argued the case based on a fundamentally flawed understanding of the bribery statute, which assumed, incorrectly, that the term "political contribution" does not include

political contributions that are not properly reported or that are otherwise illegal.

The State chose to charge Mr. Cary under sections 36.02(a)(1) and (2) of the bribery statute. As the State knew from the beginning of the prosecution, those subsections do not apply when the alleged "benefit" offered or conferred is "a political contribution as defined by Title 15, Election Code." Tex. Pen. Code § 36.02(d). The State also clearly realized that, because "political contribution" is an exception to the statute, the State had to negate it in the indictment and disprove it beyond a reasonable doubt. *See* Tex. Penal Code § 2.02 (b). Accordingly, in the Superseding Indictment, the State repeatedly charged, in all of the bribery counts and the Organized Criminal Activity count, that the requisite benefit was "other than a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305 of the Government Code." Superseding Indictment, Counts I-VII. Moreover, the jury instructions defined "political contribution" according to the statute and required, in all relevant counts, that the benefit had to be something other than a political contribution.

Thus, the State knew throughout the case, because of the way it charged Mr. Cary, that it had to negate bribery by "political contribution"

beyond a reasonable doubt. Mr. Cary did not induce this, and nothing he did changed or excused this.

### b. The "bribery is an inchoate offense" argument.

Next, the State tries to rewrite the bribery statute by arguing that the jury could have found Mr. Cary guilty of bribery if he merely caused the transfers of money to Mr. Spencer with "corrupt intent." State's Brief at 19. If he only had a generalized "corrupt intent," the State's argument goes, then the jury could have found that she did not intend for the money to go to Ms. Wooten's campaign, and it would not be a political contribution.

The most obvious problem with the State's argument is that, under the bribery statute, a generalized "corrupt intent" is not enough for a conviction. The applicable sections of the bribery statute require that the defendant must intend for the alleged "benefit" offered, conferred, or agreed to be conferred to the recipient to be "consideration," "for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant," in the case of subsection (a)(1), or "as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding," in the case of subsection (a)(2). Tex.

Penal Code § 36.02(a)(1) (2).[6]  This requisite intent distinguishes bribery

from, for example, the gift statute that makes it a Class A misdemeanor to

attempt to influence a politician through a gift with no strings attached.  *See*

Tex. Penal Code § 36.09 ("Offering Gift To Public Servant").

The State's own cases confirm that the bribery statute, as applied to

these facts, requires proof of intent to offer, confer, or agree to confer "a

benefit as consideration for the recipient's decision, opinion,

recommendation, vote, or other exercise of discretion as a public servant,"

under section 36.02(a)(1), or "any benefit as consideration for the recipient's

decision, vote, recommendation, or other exercise of official discretion in a

judicial or administrative proceeding" under subsection 36.02(a)(2).  Tex.

Penal Code §36.02(a)(1), (2).  For example, in *Martinez v. State*, 696

S.W.2d 930, 932-33 (Tex. App.—Austin 1985, pet. ref'd), the Austin Court

of Appeals explained that bribery requires proof that the defendant

"intentionally or knowingly offers or solicits a benefit as consideration for a

variety of official acts of omissions."  The *Martinez* court further explained

that, although bribery is an inchoate crime, it still requires proof that the

---

[6]  The bribery statute states that "[a] person commits an offense if he intentionally or
knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to
accept from another...any benefit as consideration for the recipient's decision, opinion,
recommendation, or vote, or other exercise of discretion as a public servant, party
official, or voter [or in a judicial or administrative proceeding]." Tex. Pen. Code §
36.02(a)(1), (a)(2).

"inchoate conduct [was] intended to achieve [the] objective" of an "agreement between the person who offers the bribe and the person who receives it." *Id.* (quoting Model Penal Code §240.1, Comment 4(b), (c)). Similarly, in *Mustard v. State*, 711 S.W.2d 71, 75 (Tex. App.—Dallas 1986, no pet.), the Dallas Court of Appeals held that, although an agreement need not be reached, in any bribery case, the State's proof must establish that the defendant "intends an agreement" proscribed by the bribery statute.

Thus, the State is correct that bribery does not require the formation of an actual agreement between the actor and the public official. It does, however, require proof that the actor at least made an ***offer*** of a benefit to the public official with the ***intent to obtain an agreement*** with the public official for consideration that the bribery statute proscribes.

In this case, the Court of Appeals correctly determined that the only proof at trial of anything even remotely resembling a benefit offered, conferred, or agreed to be conferred, to Ms. Wooten consisted of the transfers of money from Ms. Cary to Mr. Spencer that the State says were used to fund the Wooten campaign. Court of Appeals Opinion at 6. Accordingly, if Mr. Cary ***did not*** intend for the transfers to be used for the Wooten campaign, then he did not have the requisite intent to commit bribery. If he ***did*** intend for the transfers to be used for the Wooten

campaign, then the transfers are political contributions, and the State has failed to negate the political contribution exception beyond a reasonable doubt.

Accordingly, evidence that merely establishes a "corrupt intent" is insufficient to sustain a bribery conviction. Thus, if the jury believed Mr. Cary merely had a generalized "corrupt intent," it could not have found him guilty of bribery. In addition, in this context, a statute that merely criminalized "corrupt intent" would almost certainly be unconstitutionally vague and violate constitutional guarantees of Due Process and the First Amendment.

### c. The Court of Appeals' interpretation and application of the definition of "political contribution."

Next, the State attempts to manufacture an issue with the way in which the Court of Appeals interpreted and applied "political contribution." The State argues that the definition of "political contribution" requires that it be "offered or given with the intent that it be used in connection with a campaign for elective office,"[7] and the fact that the money transferred to Mr. Spencer was used for the Wooten campaign does not mean that Mr. Cary intended for it to be used in that way.

---

[7] Tex. Elec. Code § 251.001(3) (definition of "campaign contribution").

The Court of Appeals interpreted and applied the definition of "political contribution" correctly. On page 6 of its opinion, the Court of Appeals quoted the intent language above and highlighted it in bold. Then, in applying the definition, the Court of Appeals correctly stated that "if Stacy Cary transferred the money to Spencer *with the intent that it be used in connection with Wooten's campaign*, then by definition, the money is a political contribution." Court of Appeals Opinion at 9 (emphasis added).

As the Court of Appeals correctly concluded, however, other than money going to the Wooten campaign, there was no evidence of any other benefit offered, conferred, or agreed to be conferred by anyone, or any such benefit that Mr. Cary, in particular, intended to be offered, conferred, or agreed to be conferred, to Ms. Wooten "as consideration for" the actions the bribery statute requires. This is not surprising because the State based its entire case on the transfers from the Cary's to Mr. Spencer that the State said he used for campaign expenditures. The State's Brief fails to cite any evidence in the record otherwise.

Apparently realizing its lack of any other evidence, the State attempts to make an end run around the bribery statute by arguing that the jury could have found bribery beyond a reasonable doubt by something other than a political contribution if it merely believed that Mr. Cary had a non-specific

"corrupt intent." State's Brief at 22. For the reasons set forth in the preceding subsection, the Court should reject this argument.

**d.      The Standard of Review for Sufficiency of the Evidence.**

Next, the State devotes several pages of its brief to a discussion of the *Jackson* standard. In response, it is sufficient to say that this Court is certainly very familiar with the *Jackson* standard and that, for the reasons explained above, the State's evidence did not meet it.

Finally, contrary to the State's position, the law of parties does not change any of the analysis in this appeal. Under section 7.02(a) of the Texas Penal Code, every person charged with a crime must be shown beyond a reasonable doubt to have the same intent that the crime requires. *See Ex parte Thompson*, 179 S.W.3d 549, 553-54 (Tex. Crim. App. 2005) ("What matters under § 7.02(a) is the criminal *mens rea* of each accomplice; each may be convicted only of those crimes for which he had the requisite mental state."). "[A defendant] is criminally responsible for the offense committed by [a co-defendant] only if the evidence shows that she *knew* [the co-defendant's] *unlawful intent* when she acted to promote or assist in his conduct." *Hill v. State*, 883 S.W.2d 765, 771 (Tex. App.--Amarillo 1994, pet. ref'd) (emphasis in original).

**B.    RESPONSE TO STATE'S ISSUE TWO:  The Evidence Was Insufficient to Support the Bribery Convictions.**

In its second issue, the State generally argues that the evidence of bribery was sufficient.  The State is incorrect for the reasons that follow.

**1.    The Evidence Was Insufficient To Support Any Of The Three Alleged Types of Official Action.**

As explained above, the bribery statute requires that the alleged benefit to the recipient must be intended to be "consideration," "for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant," in the case of subsection (a)(1), or "as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding", in the case of subsection (a)(2).  Tex. Penal Code § 36.02(a)(1) (2).[8]  Here, there was insufficient evidence to support the three types of official action charged.

The indictment charged, and the jury was instructed on, three possible types of official action from Ms. Wooten as consideration for the alleged benefit of money transferred to her campaign:  (1) becoming a candidate for

---

[8]  The bribery statute states that "[a] person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another...any benefit as consideration for the recipient's decision, opinion, recommendation, or vote, or other exercise of discretion as a public servant, party official, or voter [or in a judicial or administrative proceeding]."  Tex. Pen. Code § 36.02(a)(1), (a)(2).

Appellee's Brief--Page 37

judge; (2) continuing to run for judge; and (3) making favorable rulings as a judge. Superseding Indictment, Counts I-VII. The evidence of each was insufficient.

First, becoming a candidate for judge cannot satisfy the official action requirement under the bribery statute because the bribery statute does not apply to a decision by a citizen to become a candidate. The relevant subsection of the bribery statute requires a benefit "as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter." Tex. Pen. Code § 36.02(a)(1).[9]

In deciding to become a candidate, Ms. Wooten was not, and was not alleged to have been, a "party official or voter." In making a decision to run for office, she was not a "public servant," either. The Texas Penal Code defines "public servant" as including "a candidate for nomination or election to public office." Tex. Pen. Code § 1.07(a)(41). "Public servant," however, does not include a potential candidate or someone who has not yet become a candidate, which is what Ms. Wooten was when she decided to become a candidate.

---

[9] Section 36.02(a)(2) does not apply to elections. It applies only to "a judicial or administrative proceeding."

Mr. Cary raised this issue below, but the Court of Appeals did not reach it because it reversed all convictions based on the "political contributions" issue. In Stacy Cary's case, the dissenting justice agreed with this analysis, and the majority assumed this argument to be correct, without deciding it. *See Stacy Cary v. State*, No. 05-12-01421-CR, 2014 WL 42612133 at *28, 45 (Tex. App—Dallas 2014).

Second, there was no evidence to support the idea that a benefit was offered to or conferred on Ms. Wooten for her to continue to be a candidate at some time after she had become a candidate and therefore a "public official." For example, there was no evidence that Ms. Wooten considered dropping out of the race or that anyone thought she needed inducement to stay in once she became a candidate. There was evidence that Stacy Cary transferred money to Spencer who spent it on the campaign and that Ms. Wooten did not drop out of the race, but this is not nearly enough to show specific intent. As the dissent in Stacy Cary's appeal explained:

> But the State did have to prove that appellant or someone in league with appellant conferred benefits on Wooten as consideration for—that is, in exchange for—Wooten's staying in the race….Absent evidence that appellant, her husband, or Spencer conferred benefits on Wooten with the intent of accomplishing an exchange of benefits for Wooten's decision to stay in the race, any finding that appellant, her husband, or Spencer had the proscribed intent is based on speculation, not evidence, and certainly not proof beyond a reasonable doubt.

*See Stacy Cary v. State*, No. 05-12-01421-CR, 2014 WL 42612133 at *45 (Tex. App—Dallas 2014) (FitzGerald, J., dissenting) (citing *McCallum v. State*, 686 S.W.2d 132, 135-36 (Tex. Crim. App. 1985) (reversing a conviction in which a litigant bought champagne for a juror because there was insufficient evidence that the benefit was "in exchange for or in consideration of her vote as a juror").

Third, the evidence at trial to show bribery as consideration for favorable rulings was particularly lacking, both as to whether it happened at all and as to whether Mr. Cary had the requisite intent. There was evidence that Mr. Cary believed that Judge Sandoval was a bad judge and was unfairly biased against him. There was also evidence that David Cary wanted Judge Sandoval to be defeated. That does not mean, however, that he wanted to bribe Judge Sandoval's opponent for favorable rulings or that he thought that Ms. Wooten would accept a bribe for favorable rulings.

More importantly, however, there is no evidence that Ms. Wooten had any idea that either of the Cary's was involved in paying anything to Mr. Spencer. In fact, the evidence shows otherwise. The evidence showed, for example, that Mr. Spencer kept Ms. Wooten and the Cary's separate and did not disclose his involvement with the Cary's to Ms. Wooten. TR 4 at 173-74. Mr. Clements, the consultant who worked on advertising and media

buys, corroborated that he had never met the Cary's and had never even heard their names mentioned. TR 7 at 21. Indeed, as the State's forensic auditor and summary witness, who had reviewed virtually every document and worked on the case for years acknowledged, there was no evidence that Ms. Wooten was aware that Mr. Spencer was working with Stacy Cary or receiving money from her. TR 8 at 55-56. Nor was there evidence that Ms. Wooten was aware that Mr. Spencer needed money from any other source to pay for the campaign expenses. TR 8 at 55.

There was also no evidence that either of the Cary's erroneously believed that Ms. Wooten knew of their involvement. Thus, there was no evidence that the judge who was supposedly bribed for favorable rulings knew who was doing the alleged bribing, or that the people who allegedly wanted favorable rulings thought the judge knew who they were or what they were doing.

The evidence about what actually happened after Ms. Wooten became a judge is consistent with this. As noted above, Mr. Cary's ongoing child custody dispute was an overwhelming concern for him, and he was extremely worried about the welfare of his two special-needs daughters. He did believe that Judge Sandoval had been vindictive and biased against him.

When Judge Wooten had an opportunity to preside over that child custody case, however, she immediately recused herself ***on her own initiative*** before making any rulings. During a hearing, she indicated, on her own, that she felt she should recuse herself, mostly because her former campaign treasurer, Alma Benavides, was representing Mr. Cary's ex-wife and it was too close to the end of the campaign. TR 3 at 77-81. She therefore asked that a motion to recuse her be filed, which it was, and she granted it. *Id.* Thus, the supposedly bribed judge immediately pulled herself off of the only case that mattered to David Cary.[10]

Moreover, when the case was assigned to an indisputably neutral judge, he vacated Judge Sandoval's rulings and ruled in favor of Mr. Cary. TR 11 at 8055, 8057-62. Thus, Mr. Cary did not need to bribe a judge for favorable rulings. He just needed a neutral judge.

---

[10] Judge Wooten did not recuse herself from a separate civil suit brought by Stacy Cary against David Cary's ex-wife and her attorney for wrongfully obtaining a turnover order for a bank account that was Ms. Cary's separate property. That case was so unimportant, though, that Ms. Cary simply dropped the case before there were any rulings on the merits. TR 11 at 2684-86 (State's Ex. 7) (voluntary nonsuit and order of dismissal). Unlike in Mr. Cary's child custody case, the recusal motion was made about nine months after Judge Wooten separated from her former law firm. This was the amount of grace period that Ms. Wooten had established as the cutoff for recusals. TR 3 at 73-74, 90. In Stacy Cary's civil case, Judge Wooten made some mixed discovery rulings, some of which favored Stacy Cary and some of which did not. TR 2 at 242. Even Ms. Cary's opposing counsel agreed that her rulings followed the law and were "easily supportable." TR 3 at 110.

## 2. The Evidence Was Insufficient to Prove That Mr. Cary Had The Requisite Intent To Commit Bribery.

In pertinent part, the bribery statute requires that the defendant "intentionally or knowingly offers, confers, or agrees to confer... any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant." Tex. Pen. Code § 36.02(a)(1). Under the plain language of the pertinent subsections, the defendant must intend or know that the benefit is "consideration for" an action or decision by the public servant acting as a public servant or in a judicial proceeding.

In this case, there is insufficient evidence that any bribe actually occurred, much less that Mr. Cary intended to take part in it. There is insufficient evidence that Mr. Cary intended or knew that the payments made to Mr. Spencer were used "as consideration for" any action or decision by Suzanne Wooten (which the evidence does not show), much less the three things alleged in the indictment.

As an initial matter, there is no evidence in the record that Mr. Cary had ever communicated with Ms. Wooten or even knew her. Indeed, as set forth above, the evidence shows that Ms. Wooten did not know the Cary's.

There is also insufficient evidence, and certainly no direct evidence, that Mr. Spencer ever offered Ms. Wooten to front her expenses, properly or

otherwise, as consideration for anything. Assuming for the sake of argument that this happened, there is no evidence in the record that Mr. Cary knew what Mr. Spencer and Ms. Wooten had discussed.

Moreover, assuming that Mr. Cary intended for Ms. Cary's payments to Mr. Spencer to help the Wooten campaign, and assuming that Mr. Spencer was improperly financing the campaign, and assuming further that Mr. Cary knew that he was doing so, these facts might show an intent to defeat Judge Sandoval through improper means, but they do not show an intent to bribe Ms. Wooten.

There is also no evidence that Mr. Cary had any idea how, when, or even if, Mr. Spencer was invoicing the Wooten campaign. There is also no evidence that Mr. Cary knew how much money Ms. Wooten's campaign had raised at any point in time. There is no evidence that Mr. Cary was at all versed in the election law requirements for campaign loans, campaign expenditures, or campaign reporting. Accordingly, on this record, the jury could not reasonably infer that Mr. Cary had the necessary intent to commit bribery.

The State argues that an alleged "subterfuge" involving a letter that Mr. Spencer addressed to Stacy Cary (which she did not sign), which he testified memorialized an agreement between himself and Ms. Cary to

provide consulting services. The State argues that there was evidence that it was backdated and that it could show that Mr. Spencer's explanation of the fees Ms. Cary paid was not true. Perhaps, but that does not support an inference that Spencer or Mr. Cary committed bribery, much less in exchange for deciding to run for office, to "continue" running for office, or for favorable rulings.

At most, a backdated letter by Mr. Spencer could lead to an inference that *he* wanted to hide *something*. It requires impermissible speculation to jump to the conclusion that the something was bribery, that it was in consideration for one of the three alleged official actions charged, and that Mr. Cary knew about it and intended to further it. *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007) (holding that, under the *Jackson* standard, "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions").

The evidence in this case shows that Mr. Cary wanted a level playing field in his child custody case and felt that he could not get one with Judge Sandoval, that he was vindicated by a neutral judge, that Ms. Wooten had no idea about any involvement between the Cary's and Mr. Spencer, and the fact that Ms. Wooten recused herself on her own motion in the child custody case. Thus, it is far *more* likely that the Spencer letter reflects concerns

about campaign finance laws and the possibility that his activities, which were unknown to Judge Wooten, might harm her if publicly disclosed. But jumping to the conclusion that this means bribery as consideration for at least one of the charged official actions and that Mr. Cary knew that and supported it requires pure speculation. Accordingly, a rational jury could not find intent to commit ***bribery*** beyond a reasonable doubt from this evidence. *See Hooper v. State*, 214 S.W.3d at 15. The dissent in Stacy Cary's case agreed. *Stacy Cary v. State*, No. 05-12-01421-CR, 2014 WL 42612133 at *47 (Tex. App—Dallas 2014) (FitzGerald, J., dissenting).[11]

---

[11] The State may point to emails to and from Spencer and Mr. Cary about an article dealing with the Supreme Court's ruling in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). *Caperton* concerned due process limitations on the ability of elected judges to hear cases involving their campaign contributors. The case was not about bribery, and the emails do not express concern about bribery. At Mr. Cary's trial, Mr. Spencer persuasively explained that *Caperton* had nothing to do with Judge Wooten. He testified that he was personally interested in *Caperton* because he believed that a Fort Worth Judge family court judge named Randy Catterton had made improper rulings involving a friend of his and others. TR 4 at 133-37. Mr. Spencer testified that Judge Catterton was receiving substantial funding from family lawyers and that he was interested in whether the *Caperton* ruling might be used to get Judge Catterton recused. *See id.* Mr. Spencer's testimony and the exhibit itself reflect that Mr. Spencer seen a blurb about the ruling and was asking Mr. Cary to send him a copy because he knew Mr. Cary subscribed to a service that would allow him to get the entire article, whereas Mr. Spencer did not. *See id.* at 136-37; *see also* TR 11 at 2200 (Tr. Exh. 40 (Mr. Cary transmitting article and saying, "Here it is.")). Indeed, in his email to Mr. Cary, Mr. Spencer says, "I think you'll understand why **I'm** interested in this subject matter." TR 11 at 2201 (Tr. Exh. 40) (emphasis added). Notably, Mr. Spencer does not suggest that Mr. Cary ("you") or the two of them ("we") would be interested in it. This email exchange does not support the necessary inferences for bribery as consideration for favorable rulings.

**C.** **RESPONSE TO STATE'S ISSUE THREE: The Evidence Was Insufficient to Support the Convictions for Engaging In Organized Criminal Activity And Money Laundering.**

The State argues only that the evidence was sufficient to support Mr. Cary's convictions for Engaging in Organized Criminal Activity ("EOCA") and money laundering if the evidence of bribery was sufficient. Because it was not, for the reasons above, the Court should reverse these convictions.

The State does not attempt to defend tampering with a government record as a basis to support the EOCA conviction. In this regard, Mr. Cary simply adopts the reasoning of the Court of Appeals that there was insufficient evidence to support tampering with a government record as a predicate offense for EOCA. *See* Court of Appeals Opinion at 12-16.

## CONCLUSION

Mr. Cary respectfully requests that the Court affirm the opinion of the Court of Appeals, which reversed all of Mr. Cary's convictions.

Respectfully submitted,


____/s/ John M. Helms_____
John M. Helms
Texas Bar No. 09401001
BRODEN, MICKELSEN, HELMS &
SNIPES, LLP
2600 State Street
Dallas, Tx. 75204
Tel:  (469) 951-8496
Fax: (214) 720-9594
john@johnhelmslaw.com

ATTORNEY FOR APPELLEE,
DAVID FREDERICK CARY


## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of this instrument has been served on counsel of record on October 2, 2015, as follows:

Joseph Corcoran (lead appellate counsel)  (via ECF and electronic mail)
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711


____/s/ John M. Helms_____
John M. Helms

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9(i)(3) of the Texas Rules of Appellate Procedure, I hereby certify that the word count of this reply brief, excluding the list of excluded sections under Rule 9(i)(1), is 10,728.  I have relied on the word count of the computer program used to prepare the document for this word count.

____/s/ John M. Helms_____
John M. Helms
